BERRY v. THE CENTRAL RAILWAY OF IOWA.

1. **Negligence:** CONTRIBUTORY.   Facts considered which were held not to constitute contributory negligence in a railway employe.

2. **Verdict:** DAMAGES.   The amount of recovery will not justify the reversal of a judgment, unless it is so large as to be manifestly the result of passion or prejudice.

*Appeal from Marshall Circuit Court.*

TUESDAY, JUNE 15.

W. E. BERRY was in the employment of defendant, and was killed, it is claimed, whilst in the discharge of his duty, by the negligence of defendant's employes.

The plaintiff, the administratrix, brings this action to recover the damages sustained by the estate.   There was a jury trial, and a verdict and judgment for plaintiff for $5,000. Defendant appeals.

The material facts are stated in the opinion.

*Brown & Sears,* for appellant.

*John T. Lacey* and *Henderson & Merriman,* for appellee.

DAY, J.—I.   The deceased had been in the employment of the defendant about two years.   At the time of his death,
1. NEGLIGENCE: February 5th, 1874, he was foreman of the car
contributory. repairers.   His duty required him to examine the cars to see if they were in bad order, and if so, to mark them.

Sometimes a proper discharge of this duty required that he should go under the cars and look up, in order to ascertain their condition. When injured he was under a car on the coal house track, which is a side track or switch, branching from the main track, and extending westward past the coal house, and terminating near the turn table, having no connection at its west end with the main track. It was generally used for the cars employed in hauling coal, though sometimes other empty cars were switched upon it. Most of the work in examining cars and making slight repairs was done on this track, more or less of such work being done there every day.

On the morning of the injury Seevers, the master of car repairers, directed Berry to strip the sides from four coal cars on this track, and to fix the brakes and oil the boxes, so that the cars could be ready to send to Missouri to haul ties. The yardmaster was notified by both Seevers and deceased that men would be at work that afternoon on the cars on this side track.

About two o'clock in the afternoon a flying switch was made. The evidence tends to show that these cars were allowed to come from the main track, upon this coal track, and to strike the cars, nine in number, standing thereon, with such violence as to move them nearly the length of a car, causing one of them to pass over the body of deceased, and inflicting injuries of which he died in about twenty minutes.

The argument of appellant seems to concede that the jury were warranted in finding the defendant was negligent. But it is claimed the deceased was guilty of such contributory negligence that the plaintiff cannot recover.

It was not negligence for deceased to go under the cars, for the evidence shows this was necessary to a proper performance of his duties.

It is claimed, however, that deceased was negligent in going under the cars, without stationing some one outside to watch for approaching cars. Under some circumstances this might be so. But in this case the yardmaster was informed that work was being done on the cars on this side track. The evidence also shows that, by the exercise of reasonable care, the

switch might have been made, without moving these standing cars. Having advised the yardmaster, who conducted the making up of trains, that he was at work upon cars on this track, deceased had a right to suppose that no cars would be switched upon the track, without notice to him, or at least that the switching would be done in a reasonably careful manner.

The jury were warranted in saying, from the evidence, that if reasonable care had been exercised in making the switch, the injury would not have occurred.

We can not, as matter of law, under the circumstances disclosed, say that deceased was guilty of contributory negligence in not having a co-employe watch for approaching trains.

II. The evidence tends to show that the car under which defendant was injured was not one of those which he was directed to strip, and get ready to send for ties, and it is claimed that deceased was not in the proper discharge of his duty at the time he received the injury resulting in his death, and that for that reason plaintiff cannot recover.

Seevers testified that this car had been marked in bad order, and that, on that account, deceased had no more to do with it until further ordered. While it may be true that, at that time, there was no special necessity for further examination of this car, yet, we cannot, as matter of law, say that in making such examination, deceased was acting outside of a discharge of his general duties.

It does not appear that he had special orders not to make further examination of this car. His general orders were to inspect cars coming in on the road, and, if out of repair, to fix them immediately if he could, and, if he could not, to mark them as in bad order. And it was his duty to designate what certain men should do as far as the daily repairs were concerned. In the discharge of these duties, he certainly had the right, if he deemed it necessary to make a re-examination of a car, and it would be applying the law with unwarranted severity to say, that in making such examination he was outside of the line of his duties, and could not recover for injuries sustained whilst so employed.

III. In rebuttal plaintiff called a witness, who, against defendant's objection, testified as follows:

"He, (Berry,) was in the habit when the trains came in, of going and looking them over, and if there were cars in the yard and he wasn't present, then we would look them over, and if anything was seriously out of repair he would go and see what was necessary. In regard to some things about the cars we did not know whether it was better to patch it up, or put new timbers in its place. We used to call his attention to these things, and also Mr. Seevers'."

We discover no well grounded objection to this testimony. It shows merely the nature of decedent's duties, and the manner in which he was accustomed to discharge them; that he was in the habit of examining trains when they came in, without waiting for special orders. Such a case was strictly in conformity with his general duties, and the instructions and orders under which he acted.

IV. The defendant asked ten instructions, all of which were refused. The court gave fifteen instructions, to four of which defendant urges objections. The instructions refused, so far as proper, and applicable to the evidence, are embraced in those given. Most of the objections to those given have already incidentally been determined. None of them are tenable. The instructions are too lengthy to be set out in full, inasmuch as they present no new legal propositions. The charge of the court, taken together, is fully as favorable to defendant as the law will warrant.

V. It is urged that the verdict is large. It is not, however, claimed, that it is so large as to warrant the conclusion that it was the result of passion or prejudice.

2. VERDICT: damages.

Deceased was in good health when he sustained the injury, thirty-two years of age, and he had an expectancy of life, as shown by the life tables, of thirty-three years.

He was earning $2.50 per day.

Under such circumstances we do not feel warranted in declaring that the damages allowed are excessive.

The record discloses no error.

AFFIRMED.