GEORGE ROENFRANZ v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Railroads:** NEGLIGENT CONSTRUCTION OF TRACK.    It is as much the duty of a railway company to use the required care to make a spur track a reasonably safe place for an employee to work as it is in the construction of its main line, and where it places ties thereon in such manner as to form a trap for the foot of a brakeman when stepping between the rails, unless ballasted, it becomes its duty to fill between the same with the necessary ballast to meet the degree of care required by law.

**Same:** ASSUMPTION OF RISK.    A brakeman assumes the risk of dangerous conditions in the track of which he has knowledge or in the exercise of reasonable care ought to know, but in the instant case, while plaintiff may have known of the unballasted condition of the track, it cannot be said from the evidence as matter of law, that he knew or ought to have known of the peculiar position of the ties between which his foot was caught.

**Same:** CONTRIBUTORY NEGLIGENCE.    A brakeman in the performance of his duties while switching cars may assume that his signals will be obeyed, but whether the engineer is required to be at all times on the lookout and observe the signals depends largely on the circumstances of the particular case.    Under the evidence in the instant case it is held that the plaintiff was not guilty of contributory negligence as matter of law in assuming that his signal to stop was observed, and in stepping in front of a moving car.

**Same:** INSTRUCTION.    Where it was shown without dispute that it was the duty of the engineer to keep a constant lookout for signals while switching, the court correctly instructed that if plaintiff gave the stop signal in the customary manner where the view was unobstructed and could have been seen by the engineer if looking, and the speed of the cars was such that by

the use of ordinary care they might have been stopped within a few feet, then plaintiff might assume that the signal was seen and the cars would be stopped.

**Appeal:** REVIEW OF QUESTIONS NOT URGED BELOW.  Objection that charges of negligence are not sufficiently pleaded to warrant submission to the jury, when first made on appeal, will not be considered.

**Negligence:** INSTRUCTION.  Where it was the duty of an engineer to keep a constant lookout for signals while switching, an instruction authorizing a finding for plaintiff if his failure in not seeing the signal or discovering plaintiff's peril was the cause of the injury, was proper.

**Expectancy of life:** INSTRUCTION.  It is not erroneous to instruct the jury that the expectancy of life of a person the age of plaintiff and in good health was a certain number of years, where such was the admitted fact, and the jury was also told that it did not follow that plaintiff would live that long, and that all other proven facts bearing on the matter should be considered.

*Appeal from Emmet District Court.*—HON. D. F. COYLE, Judge.

TUESDAY, JUNE 9, 1908.

REHEARING DENIED THURSDAY, OCTOBER 29, 1908.

ACTION to recover for personal injuries.  Judgment for the plaintiff.  The defendant appeals.  *Affirmed.*

*Carroll Wright, J. L. Parrish, J. M. Parsons* and *C. W. Crim,* for appellant.

*Mark J. Groves* and *J. G. Myerly,* for appellee.

SHERWIN, J.—The plaintiff was the head brakeman on one of the defendant's freight trains, and he was injured while assisting in switching at a gravel pit near its main line.  A spur track had been constructed from the

main line to the gravel pit, and it was on this track that the plaintiff received the injury complained of.  Negligence was charged as follows:

That said spur track had been improperly constructed, because defendant negligently laid and maintained two railroad ties at such place and in such proximity to each other, without properly filling the space between them and under them, thus leaving a hole in such manner as to expose plaintiff to the danger of having his foot caught. . . .  That said spur track was negligently constructed, for the reason that it was not properly surfaced or filled in between said ties. . . .  That the engineer and employes in charge of the engine failed to obey the signal of the plaintiff to stop, and failed to stop the said engine and car prior to the time the plaintiff was caught.  That the engineer and employes in charge of the engine failed to keep a lookout for the plaintiff.  That the engineer and employes in charge of said engine proceeded to back said engine and car after the plaintiff had thrown his body outside of the rails of said track. and after the break beam had loosed his foot.

The plaintiff had been on the run in question for some time prior to the accident, and had frequently assisted in placing cars on this spur track, and had assisted in taking out cars of ballast on several occasions.  On the day of the accident the train, consisting of nineteen or twenty cars, reached the switch from the north between six and seven o'clock in the evening.  The second and third cars from the engine were empty ballast cars which were to be thrown down on the spur track to the gravel pit.  The plaintiff and the other brakeman were to set out these two cars.  They uncoupled the third car from the engine from the balance of the train, and the plaintiff turned the switch and lined it up for the spur track; the other brakeman, Campbell, staying on the empty cars to cut them off. The plaintiff gave the engineer a kick sign to shove them

back, and they were kicked back on the spur; the two empty cars having been uncoupled from the car next to the engine. When these two cars were kicked back on the spur, the engine and car attached to it did not go back as far as the switch, and after the cars were kicked back the plaintiff threw the switch back for the main line, and the engine and car attached to it moved back over the switch towards the cars still remaining on the main line. The two empty cars that had been kicked down on the spur track stopped on a crossing, and it became necessary to move them further along. The plaintiff told the engineer that they would have to be shoved off the crossing, and the latter answered, "All right," and went south on the main line beyond the switch. The plaintiff then lined the switch for the spur track, and after so doing walked down along the west side of said track; the engine and the car attached to it following behind him. The plaintiff stated that the knuckle on the north end of the car attached to the engine was open, and that after he had walked along the spur track a distance of one hundred and thirty-eight feet from the switch target, and when he was about one hundred feet from the empty ballast cars standing on the crossing, he stepped in front of the moving car to close the knuckle, and, while attempting to do so, his foot was caught between two ties of the unballasted track, and that he thereupon threw his body outside of the rail, and his foot was pulled from between the ties by the brake beam. He was then dragged several feet, and a car wheel ran over his foot. The plaintiff testified that, before stepping in ahead of this moving car, he gave a signal to the engineer to stop. That his back was at the time towards the engineer, and he signaled with his left hand, and did not look around to see whether the engineer saw his signal or not. He further testified that, after stepping in front of the moving car, he discovered that the engineer was not attempting to stop, and that he thereupon tried to get away

from in front of the car, and, while doing so, his foot was caught as stated.

For convenience, we shall discuss the several propositions relied upon by appellant for a reversal in the order of their presentation in argument to us.   It may be admitted, for the purposes of this case, that the unballasted condition of the track at the point ·of the accident would not as a matter of law constitute negligence; but, in addition to this, the evidence shows that the two ties between which the plaintiff's foot was caught were of such shape and were placed in| such a position as to form a trap for the foot which might happen to step between them.   The law requires the master to use ordinary care to furnish a reasonably safe place for the employe to work, and, if the master fails in this respect, he is guilty of negligence.   Applying this rule to the appellant, it was as much its duty to use the required care in the construction of this spur as in the construction of its main line track, and, if the kind of ties used and the manner in which they were placed under the rails required ballasting to meet the degree of care demanded by the law, it was the appellant's duty to use the necessary ballast.   *Trott v. C., R. I. & P. Ry. Co.,* 115 Iowa, 80; *Brooke v. C., R. I. & P. Ry. Co.,* 81 Iowa, 504; *Goodrich v. B., C. R. & N. Ry. Co.,* 103 Iowa, 412; *Sankey v. Railway Co.,* 118 Iowa, 39.

*1. RAILWAYS: negligent construction of track.*

It appears that the spur track was ballasted for about one hundred and forty feet north of the switch target, and that the rest thereof was unballasted; and it is undisputed that it was unballasted at the point of the accident.   If it be admitted that the plaintiff knew the condition as to ballast at the point of injury, it does not necessarily follow that he assumed the risk incident to the peculiar condition of the two ties between which his foot was caught.   Although he may have known of the unballasted condition of the track at

*2. SAME: assumption of risk.*

the point in question, he testified that he did not know of the peculiar trap formed by the two ties. Of course, if he ought to have known this condition, he would be charged with actual knowledge. The record, however, fails to show facts from which it can be said as a matter of law that he should have known it. The question was therefore for the jury. In *Flockhart v. Coal Co.*, 126 Iowa, 576, relied on by appellant, the plaintiff testified that he did not look to see the condition of the track, because it was not his business to do so. He had been over the same place but a short time before he was injured, and could have known its general condition had he paid any attention to it. It is not shown that this plaintiff had ever before had an opportunity to observe the condition involved here, and the situation he was in immediately before he was caught did not afford means of knowledge.

The appellant with great force contends that the plaintiff was guilty of contributory negligence in stepping before the moving car without knowing whether his signal to stop had been observed by the engineer.

3. SAME: contributory negligence. It is said that an engineer has so many duties to perform when running his engine that he cannot be expected to be constantly on the lookout for signals, that such fact was known to the plaintiff, and that he should not have gone in front of the car until in some way assured that his signal was seen by the engineer and would be obeyed. It is the rule in this State that a brakeman, in the performance of his duty, has the right to assume that a signal to stop will be obeyed. *Steele v. Railroad Co.*, 43 Iowa, 111; *Bucklew v. Railroad Co.*, 64 Iowa, 606; *Beems v. Railway Co.*, 58 Iowa, 153; *Nichols v. Railway Co.*, 69 Iowa, 154; *Berry v. Railroad Co.*, 40 Iowa, 564. None of our cases, so far as we are advised, go to the length of holding that a signal must be observed at any and all times, or that the engineer must at all times be on the lookout for signals. This must depend much on

the circumstances of the particular case.   In this case it
would seem that such lookout was not necessary at the
particular time when the signal was given.   The engineer
took his engine and the car attached to it in on the spur
for no other purpose than to move the empty ballast cars
off of the crossing, and this could be done without coupling
them.   The plaintiff was caught about one hundred feet
from the ballast cars, so far from them, in fact, that there
would seem to be no necessity for going in front of the
moving car at that place.   But these facts are not abso-
lutely controlling, for the plaintiff testified that it was the
duty of the engineer·to keep a constant lookout for signals
when the crew was switching.   If this is true, the plaintiff
was justified in assuming that his signal would be seen,
because they were then switching, and a few feet one way
or the other could make no difference with the requirement
without absolutely destroying the safety of the rule.   In
other words, if the plaintiff in such cases has the right to
assume that a signal that is seen will be obeyed, he also
has the right to assume that his signal will be seen if it
is the engineer's duty to keep a constant lookout for signals
when switching.   On the record before us, it cannot be said
as a matter of law that the plaintiff was guilty of con-
tributory negligence.

Complaint is made of the following instruction: "Upon
the question of contributory negligence, you are further in-
structed that if the plaintiff did give the signal to stop, and
4. SAME: in-      gave it in the usual or customary manner,
   struction.      and at a place where the view was unob-
structed, and where the engineer could have seen it if he
had been looking, and if the engine and car were moving
at a low rate of speed so that the engineer by using ordi-
nary care would have stopped them in five or six feet or
thereabouts, then the plaintiff would have a right to as-
sume that the signal would be obeyed and the car stopped
within said five or six feet or thereabouts.   But if the

plaintiff did not give said signal, or if he did not give it
in the usual manner, or if he gave it at a place where the
view was obstructed so that the engineer could not have
seen it if he had been looking, then the plaintiff would
have no right to assume that the signal would be obeyed
and the car stopped."

In view of the undisputed evidence that it was the
duty of the engineer to keep a constant lookout while
switching, we think the instruction correct.

Instructions 13, 14, 15, and 19 are assailed for various
reasons. It is said that the charges of negligence in the
engineer's failing to keep a lookout for the plaintiff and

5. APPEAL: re-
view of ques-
tions not
urged below.

in continuing to back the engine after plain-
tiff had thrown his body outside the rails,
and after the brake beam had loosened his
foot, were not sufficiently pleaded to warrant their sub-
mission to the jury. A sufficient answer to this position
is that no objections were made to these charges on the
trial. *Maloney v. C. & N. W. R.*, 95 Iowa, 255.

It is further said that, under these instructions, the
jury was authorized to find for the plaintiff if it found
as a matter of fact that the engineer did not keep a lookout

6. NEGLIGENCE:
instruction.

for the plaintiff, or that he backed the en-
gine after the plaintiff threw his body out-
side of the rails, and that these instructions as a whole
were erroneous because they authorized a recovery on the
grounds stated whether the engineer saw the plaintiff's
peril or not. If it was the duty of the engineer to keep
a constant lookout for the plaintiff while they were switch-
ing, and if his failure to do so resulted in the plaintiff's
injury, it can make no difference whether the failure was
in not seeing the signal to stop or in not seeing the plain-
tiff when he was in a place of extreme peril. If the engi-
neer could easily have seen the peril had he been on the
lookout, and if it was a part of his duty to keep such look-
out, there was negligence in not performing such duty.

The doctrine of the last clear chance has nothing to do with the situation, because that is only applied where there is no such duty, and where the plaintiff is shown to be also negligent.

The instructions are also criticised because confusing and too long. They are rather long and somewhat complicated, but, on the whole, we think the jury was not misled by them.

The court instructed that it appeared without dispute that the plaintiff at the time of the injury was thirty-one years of age, and that the expectancy of life of a person of that age and of good health was thirty-four and six-tenths years. There was no error in so instructing. Such was the admitted fact, and the court in another instruction told the jury that it did not follow that the plaintiff would live that long, and that all other facts and circumstances bearing on the matter, as shown by the evidence, should be considered. Some of the other instructions are criticised, but we find no error therein for which there should be a reversal. The judgment is *affirmed*.

7. EXPECTANCY OF LIFE: instruction.