E. M. McCALL, Appellee, v. NORMAN B. PITCAIRN et al., Appellants.

No. 46094.

NOVEMBER 24, 1942.

Harry S. Greenleaf and W. B. Hays, both of. Centerville, for appellants.

Valentine & Valentine, of Centerville, for appellee.

HALE, J.—The appellee in this action was a conductor on a train of the Wabash Railway running from Moulton, Iowa, to Ottumwa, Iowa, and was so engaged on January 15, 1941, the date of the alleged injury. This Ottumwa line connects at Moulton with a line operated by appellants from Des Moines, Iowa, to Moberly, Missouri. On January 15th appellee states that he

took his regular run to Ottumwa and returned in the evening of the same day. It was stormy, having been raining lightly and sleeting, and the rain was freezing on the ground. A part of appellee's daily duties consisted of switching operations in the Moulton yards in the morning and in the evening after returning from his Ottumwa run. About 9 o'clock in the evening on said January 15, 1941, he had returned from Ottumwa with 12 freight cars, including three cars of meat and three carloads of barley, all destined for St. Louis, Missouri, or beyond. While switching the cars in the Moulton yards in order to get the cars destined for out of the state ready for train No. 98 from Des Moines to pick up and take to Moberly, Missouri, he was injured in throwing what is known as No. 3 switch so as to shove the cars of his train through the No. 3 switch track onto the lead track to be picked up by train No. 98. Train No. 98 makes no stops between Moulton and the Missouri line.

The evidence shows that while so engaged he slipped and fell and slid down a bank about 20 feet, then came back up and went on with his work. He held a lighted lantern in his left hand and was giving signals to the engineer and the brakeman on the train with which he was doing the switching. He finished his work as a conductor in switching the cars and walked home with one of the brakemen. The brakeman was the only person he told about the fall and he made no complaint at the time to anyone else.

There was evidence that up to January 11, 1941, the ordinary and suitable yard switch was in use at No. 3 track. Such switch was thereafter damaged, and it is claimed a heavy main-line switch was installed temporarily and was in use on January 15, 1941. The difference between the regular yard switch and the main-line switch was that the latter had a long reach rod, which required the switch to be placed at the extreme end of the ties to which it was fastened, overhanging a steep bank, and it was therefore necessary that anyone throwing the switch would have to stand, with his feet wide apart, at the decline where the footing was uncertain and difficult. The switch had only one safety catch. As appellee's testimony shows, while at-

tempting to throw the No. 3 switch in question, he fell, and in sliding down the bank twisted and strained in an effort to check his fall. He was checked partially by some partly buried ties on the bank and slid to a path where his fall was finally stopped. He climbed back, threw the switch, and proceeded home.

Appellee worked through the following day but testified that his side hurt continuously, which pain increased the next day and the day following. On the day after that he went to the Wabash Railway Company physician in Moulton, who first prescribed medicine, and on the following day gave the appellee a physical examination and diagnosed his condition as an inguinal hernia and recommended an operation. The evidence does not show that there was any intervening accident or injury between January 15, 1941, and the time when the injury was so diagnosed. There was evidence that for some time the appellee had been suffering from an umbilical hernia. Appellee stopped work on January 23d, and on January 25th was operated on for hernia at the Wabash Hospital at Decatur, Illinois. He remained in the hospital until February 15, 1941, but did not return to work until April 1st, when he continued on his old run until May 11th, and thereafter, on account of his condition, took a lighter run which paid less money and required the payment of additional expense money. Thereafter, on October 6, 1941, he returned to his old run. There was evidence on the part of the appellee that the main-line switch was in use on January 15th, but there was also evidence on the part of the appellants that such switch was not installed until January 18th and was thereafter replaced by a standard switch on January 20th. Appellee claimed damages for loss of wages by reason of total disability from January 23, 1941, to March 31, 1941, loss of wages and additional expense money on the lighter run from May 11th to October 6th, and for pain and suffering. Appellants' claim was that if the appellee had a hernia it was not caused by the negligence of the appellants or any of their employees but was a congenital defect which appeared some time after the appellee had fallen while on duty. They further claim that the installation of the main-line switch was the usual and customary thing to do until the standard switch could be

installed, and they claim only two days were consumed in making the change.

I. The receivers and the railway company were joined as defendants. The first claim of the appellants is that the court erred in overruling their motion for directed verdict, apparently basing their error on the overruling of ground 1 of their motion for directed verdict, which is as follows:

"(1) That there is no evidence that the defendants named in the plaintiff's petition are in fact the receivers of any railway, or that the plaintiff was in the employ of any of the defendants named in said petition."

Without reviewing all the testimony on that subject, we think that the evidence does show that the railway was being operated by the receivers. The evidence consists of various exhibits, such as vouchers for wages and orders issued in the name of such receivers. While appellants urge that agency cannot be proved by the declarations or statements of the alleged agents, there is reason to believe that evidence that the receivers were operating the road for at least a number of months is sufficient to warrant the belief that they were actually in charge of the road, especially since under the record there is nothing but a general denial of all of the allegations of the petition, and at no place in the record is there any objection of any kind on the ground that such receivers are not proper parties defendant. If they were improperly joined their remedy was by motion, and by waiting until the close of all the appellee's testimony before making any objection, said receivers are estopped from then asserting it. See Halligan v. Lone Tree Farmers Exchange, 230 Iowa 1277, 1286, 300 N. W. 551, 555, citing Constantine v. Grupe Co., 147 Iowa 142, 124 N. W. 189; Lull v. Anamosa Nat. Bk., 110 Iowa 537, 81 N. W. 784; and Miller v. Keokuk & Des Moines Ry. Co., 63 Iowa 680, 16 N. W. 567. In the Halligan case it is said:

"It is next urged that the trial court erred in treating the case as having three defendants, the corporation, Lenz, and Hoskins. In plaintiff's petition, appellant Lenz was referred to 'as president thereof' and Hoskins 'as manager thereof' (that

is, of the corporation). Appellants' claim is that the officers were not sued in their individual capacity but merely as agents of the corporation which was the sole defendant. It is sufficient answer to this complaint that appellants themselves in their answer and other pleadings and at least until after appellee rested his case clearly treated the case as brought against three defendants and did not move to strike for misjoinder of parties."

See, also, Manker v. Phoenix Loan Assn., 124 Iowa 341, 344, 100 N. W. 38, wherein, in a proceeding against such loan association, the receivers had appeared and defended. The court says:

"But if this were not the established rule in this State, it is clear that when a receiver has appeared and defended, and, as in this case, has invoked the affirmative judgment of the court, he cannot, after an adverse decision, question the jurisdiction to which he has voluntarily submitted or himself invoked." Citing various cases—Cooley v. Smith, 17 Iowa 99, Elkhart Car Works Co. v. Ellis, 113 Ind. 215, 15 N. E. 249; Mulcahey v. Strauss, 151 Ill. 70, 37 N. E. 702. "Moreover, when the receivers voluntarily appeared and submitted to the jurisdiction of the court, it will be presumed that they were authorized to defend, and such presumption will obtain until the contrary is affirmatively shown. The presumption is that a general receiver has authority to sue, and, when the receivers in these cases filed petitions asking the foreclosure of the mortgages given to the association, it was an invitation to the court to settle all differences between themselves, as receivers, and the plaintiffs, growing out of the transactions connected therewith."

We think the receivers were proper parties defendant.

II. The second objection of the appellants is that the court erred in overruling their motion to withdraw from the consideration of the jury any and all claims against the Wabash Railway Company. The same rule as is discussed in the preceding division should apply. If the railway company was improperly joined the matter should have been disposed of by motion, but by appearing and pleading we think the railway company is estopped from asserting this objection.

As to this and the preceding objection, we see no injury of any kind that has been suffered by either the railway company or the receivers. Should a joint judgment be entered against them, the payment by one will absolve the other from liability. By having appeared and submitted to the jurisdiction of the court, they are now too late to urge the objection that they are improperly made parties or improperly joined.

■ III. Appellants insist that there was no competent evidence of the negligence of the appellants or any of them. With this we disagree. They cite many cases in support of their claims asserting that an employee cannot recover for injuries received in use of standard equipment in general use in absence of proof of some defect due to employer's negligence; that only in cases due to the negligence of the railroad does the Federal Employers' Liability Act [45 U. S. C., section 51 et seq.] create liability for injury received by employees; that appellee must prove the negligence of the employer and that said negligence was the proximate cause of the injury; and that negligence cannot be predicated on a purely accidental occurrence. Further, the mere fact that the injury has been sustained by an employee while discharging the duties of his employment does not give rise to an inference or presumption that the employer has been negligent; that it is sufficient if the master furnish his servant with reasonably safe and suitable appliances and places, and he need not furnish the most expensive, nor those of a particular kind; the employer is required to use reasonable care to furnish the employee a safe place to work, the standard being the care used by prudent employers in similar circumstances; and that the Federal Employers' Liability Act does not make an employer an insurer of the safety of its employees. All of these statements, for the purposes of this case, we will assume to be correct.

We are satisfied that there was a jury question on the evidence of negligence sufficient to warrant the jury to find that the appellee was injured by reason of such negligence. The three grounds of negligence specified in appellee's petition are: (1) In not installing and using a proper and suitable yard switch, with a proper length reach rod, rather than the main-line switch with an improper length reach rod; (2) in placing

said main-line switch at the extreme end of the switch ties, which required anyone throwing the switch to stand at the extreme end of the switch ties and at the top of the bank or decline where there was no proper and safe footing; and (3) in not building up the bank, fill, or roadbed at said place so that anyone throwing the switch would be able to stand on solid ground and would have a proper and safe footing. Without reviewing the lengthy testimony on this subject, we are satisfied that there was evidence sufficient for the jury on all three of these specifications of negligence.

As to the question of whether there was a short or long switch at the time of the accident there was the testimony of the appellee and also testimony to the contrary. The conflict in the evidence created a jury question. The fact that the bank had been steep for some time before the accident and no complaint had been made by the appellee must be considered with the fact that there was evidence that a long switch recently placed near the edge of the bank had been installed, necessitating the appellee to stand further out on the bank. There was evidence as to all of these matters. The general rule as to the duties of the company is given in 39 C. J. 392, section 509 (e), as follows:

"It is the duty of a railway company to use reasonable care to furnish and to keep in order and rightly placed switches which are free from defects and reasonably safe and suitable for the purpose in view."

Appellee cites various cases in support of his argument that defective switches such as his evidence in this case shows to have been installed constitute actionable negligence. See Brooke v. Chicago, R. I. & P. R. Co., 81 Iowa 504, 47 N. W. 74; Chicago & E. R. Co. v. Dinius, 180 Ind. 596, 103 N. E. 652; Franklin v. Winona & St. P. R. Co., 37 Minn. 409, 34 N. W. 898, 5 Am. St. Rep. 856; Roenfranz v. Chicago, R. I. & P. R. Co., 140 Iowa 33, 116 N. W. 714; and Austin v. Chicago, R. I. & P. R. Co., 93 Iowa 236, 61 N. W. 849.

IV. Appellants allege that there can be no recovery for losses which could have been prevented by reasonable efforts on the part of the person injured. As an abstract question of law we do not disagree with this statement, but do not believe

that it applies to the evidence in this case. As heretofore stated, appellee, after his injury, was totally incapacitated for some time. The evidence then shows that he was compelled to take a lighter run for a time, afterward resuming his regular run, and that the lighter run paid less wages and was such that he was required to pay additional money for expenses occasioned by the different line of travel he was required to take. Appellants argue that his expenses were unnecessarily large and different from those paid by other railroad men. The amount claimed for is $412.68, which includes loss of wages $313.68, and additional expense $99. In any event, the question of whether or not this was a reasonable amount for expense was for the jury. Undoubtedly, the loss of wages was an item for which, if he was entitled to recover, appellee should be compensated. Additional expense is also an item. The jury had a right to take into consideration the fact that he had been injured and was not in good health. He was entitled to such reasonable expense as was necessary. Vedder v. Delaney, 122 Iowa 583, 98 N. W. 373.

V. Appellants allege that the court erred in giving instruction No. 16 to the jury. This instruction should be read in connection with instructions Nos. 14 and 15. No. 14 states, in substance, that if the appellee failed to establish that the appellants were negligent in at least one of the particulars, the jury should return a verdict for the appellants, but if the appellee has established such negligence they should determine whether such negligence was the proximate cause, and that the burden was upon the appellee to establish such proximate cause. Instruction No. 15 defines proximate cause. No. 16, the giving of which was assigned as error by the appellants, was given in view of the provisions of the Federal Employers' Liability Act, 45 U. S. C., section 53, which provides:

"In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be

diminished by the jury in proportion to the amount of negligence attributable to such employee * * *."

The burden of proving contributory negligence under such federal act, in order to effect a diminution of damages, was necessarily on the defendant, regardless of the rules, statutory or otherwise, in the state court in which the action was brought. 39 C. J. 1004, section 1220, citing various cases. McLain v. Chicago Great Western R. Co., 140 Minn. 35, 167 N. W. 349, 12 A. L. R. 688. In the comments in 12 A. L. R. 694, it is stated editorially:

"But it may now be stated as a well-established rule that the Federal act under consideration [Federal Employers' Liability Act] supersedes state laws, constitutional, statutory, or common, which relate to the liability of an interstate carrier by rail for injury to its interstate employees." Citing many cases, including Central Vermont Ry. Co. v. White, 238 U. S. 507, 35 S. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252.

█ VI. Error is also assigned by appellants in submitting the claim of appellee against both the receivers and the Wabash Railway Company and entering judgment therefor. This has already been discussed under the first assignment of error.

Nor do we find any error in the court's instruction No. 5, in telling the jury that at the time the appellee was injured he was engaged in the employ of the Wabash Railroad Company and its receivers, as from the pleadings, as we have heretofore indicated, the court was authorized so to do.

█ VII. Appellants argue that an employee assumes the risk of danger normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. The injury complained of occurred January 15, 1941. The Federal Employers' Liability Act, 45 U. S. C., section 54, as amended August 11, 1939, reads as follows:

"That in any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the

risks of his employment *in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier;* and no employee shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.'' (We have italicized the amendment.)

Appellants' argument as to this question is based on the claim that there is no competent evidence proving, or tending to prove, any negligence on the part of the appellants. But if the appellants were negligent, and their negligence was the proximate cause of appellee's injury, then the doctrine of assumption of risk does not apply. We have already discussed the question of negligence and hold that there was such evidence of negligence as the jury might consider and such as to sustain their verdict.

Appellants also insist that the negligence of the appellants, if any, was not the proximate cause of the injury. All the cases cited by appellants on this question arose prior to the passage of the amendment of 1939, but even if brought after the passage of the amendment we would still be unable to agree that they support this contention. The evidence of the appellee as to the manner in which the injury occurred, the situation and condition of the switch, the fall of the appellee, which the jury could very well find was the result of a defective or misplaced switch, the development of the hernia, and the evidence of physicians as to the manner of the fall and the effect thereof, are all sufficient to warrant the submission to the jury of the question of proximate cause. The fact that there was evidence that there was a predisposition to hernia, or that it was considered congenital, does not affect the situation. There was evidence both as to the kind of accident and its effect, and the ordinary and common results of the kind of accident testified to, such as to make the question of proximate cause a question of fact for consideration of the jury. We have examined all the authorities cited by appellants. Differing facts, situations, and issues make them inapplicable. See, as supporting appellee's

contention, Giguere v. Whiting Co., 107 Vt. 151, 177 A. 313, 98 A. L. R. 196, Annotations on pages 205 and 206.

VIII. Appellants insist that there was no competent evidence that appellee was engaged in interstate commerce at the time of the claimed injury and that the court should have withdrawn the case from the jury for that reason. The evidence was uncontradicted that several of the cars were destined for St. Louis or points beyond the state line. We call attention to the amendment of August 11, 1939, to section 51 [45 U. S. C.] of the Federal Employers' Liability Act, which provides:

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter."

See supplemental notes to 45 U. S. C. A., section 51.

Switching for the purpose of making up an interstate train would seem to us necessary for the movement of the train in interstate commerce and one so engaged would be considered as employed in interstate commerce. See 15 C. J. S. 354, section 51e, and cases cited; 35 Am. Jur. 862, section 446; and O'Neill v. Sioux City Terminal R. Co., 193 Iowa 41, 186 N. W. 633, and cases cited therein. The fact that the cars were destined for points without the state would be sufficient to authorize the court to find that the transfer of the cars for the carrying thereof was an act of interstate commerce, and this, we think, is the general rule. See, also, Mulstay v. Des Moines Union R. Co., 195 Iowa 513, 192 N. W. 439, and cases cited therein; and also Byram v. Illinois Central R. Co., 172 Iowa 631, 154 N. W. 1006, Ann. Cas. 1918A, 1067, and cases cited. The evidence was ample to show the character of the shipment. The cars were destined for points without the state, were intended to be picked up by the interstate train, and it was while transferring these cars that the appellee was injured. The interstate cars departed during the night. No evidence or suggestion is made in the evidence anywhere that the out-of-the-state cars did not actually

proceed on the journey and to their destination. Quoting from 15 C. J. S. 356, section 51e:

"Furthermore, since an interstate train entering a switching yard retains its interstate character until all the cars are distributed to their appropriate places, a switchman injured before such disassociation has been effected, while standing by for further switching duty, is within the act."

We think it is plain that under the evidence the cars were in interstate commerce and the appellee was so engaged.

We have examined the authorities cited by the appellants under the various claims of error made in their brief and argument. The assignments of error have been included in the general questions heretofore discussed. The case seems to have been carefully and fairly tried under the rules of the Federal Employers' Liability Act and of our own court, and we find no error therein. The case should be affirmed.—Affirmed.

All JUSTICES concur.