**Bernard D. SCHNOOR and Donna L. Schnoor, Appellees,**

v.

**Robert M. DEITCHLER and Ford New Holland, Inc., Appellants.**

No. 90–1637.

Supreme Court of Iowa.

March 18, 1992.

Gregory G. Barnsten and Philip Willson of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellant Deitchler.

William J. Brennan and Joseph A. Jordano of Fitzgerald, Schorr, Barmettler & Brennan, P.C., Omaha, Neb., and John P. Churchman, Council Bluffs, for appellant Ford New Holland, Inc.

Michael G. Reilly of Perkins, Sacks, Hannan, Reilly & Petersen, Council Bluffs, for appellees.

SCHULTZ, Justice.

This litigation was commenced by plaintiffs Bernard D. Schnoor and his wife Donna L. Schnoor to recover damages resulting from injuries Bernard received when his leg became entangled in a grain auger. Defendant Robert M. Deitchler owns the grain auger in question. Plaintiff Bernard alleges that defendant Ford New Holland, Inc. (Ford), is the successor corporation to Versatile Farm Equipment Operations (Versatile), manufacturer of the grain auger. The trial court submitted the issue of comparative fault of the parties to a jury. The jury determined damages and apportioned fault. The trial court entered judgments against each defendant. Defendants separately appealed. We reverse on each judgment.

Bernard, who was age sixty-four at the time of the accident, is an experienced farmer and grain hauler. Deitchler hired Bernard to haul beans from Deitchler's farm. Deitchler loaded the beans into Bernard's truck with his auger. As the truck was being filled, Bernard walked near the loading end of the auger and slipped on beans that were on the ground. His left foot went into the unguarded auger causing severe injuries to his leg.

Each defendant filed a separate notice of appeal. Ford maintains that the trial court erred in failing to grant its motion for a directed verdict because plaintiffs failed to prove that it was liable for Versatile's actions. Deitchler also asserts that the trial court should have directed a verdict in his

favor. He argues that a business invitee cannot recover from the occupier of land if the condition causing the injury is open and obvious or if the business invitee has actual knowledge of the danger. Each defendant also complains of a jury instruction.

I. *Successor corporation.* Plaintiffs' petition alleged that Ford was the successor in interest to Versatile. Ford counters that plaintiffs failed to produce substantial evidence of this allegation.

■ Plaintiffs seek an exception to the general rule that a purchasing corporation is not liable for the debts or liabilities of a corporation that sells all of its assets to the purchasing corporation. *DeLapp v. Xtraman, Inc.*, 417 N.W.2d 219, 220 (Iowa 1987). Plaintiffs urge that Ford, by its answers to two interrogatories which were received into evidence, entered into an agreement to assume the liabilities of Versatile.

We now examine the interrogatories and answers as follows:

INTERROGATORY NO. 17: Please describe in full detail the nature of the business transaction which lead to Defendant acquiring the company known as Versatile Farm Equipment Operations, i.e., whether it was a merger, a total sale, etc.

ANSWER:

New Holland of Canada Ltd. acquired selected assets of Versatile Corporation through an Asset Purchase Agreement dated May 21, 1987. On December 31, 1988, New Holland [of] Canada merged into Ford New Holland Canada, a subsidiary of Ford New Holland, Inc.

INTERROGATORY NO. 18: Please state whether or not Defendant, as part of the agreement to acquire Versatile Farm Equipment Operations, has agreed to be liable for products liability claims arising out of products manufactured and sold by Versatile Farm Equipment Operations prior to the acquisition by Defendant.

ANSWER:

A copy of sub-section 3.03(a) of the Asset Purchase Agreement is attached.

This redacted copy is responsive to this particular Interrogatory.

The attached Asset Purchase Agreement between Versatile Corporation and New Holland of Canada, Ltd., provides that the purchaser agrees to assume responsibility for product liability claims and lawsuits involving products manufactured by Versatile.

We disagree with plaintiffs' claim that the interrogatory answers show that Ford agreed to assume Versatile's liability. The answers to the interrogatories expressly state that New Holland of Canada, Ltd., acquired Versatile's assets and assumed responsibility for product liability claims involving Versatile's products. New Holland of Canada, Ltd., then merged with Ford New Holland Canada, a subsidiary of defendant Ford. There are no admissions that defendant Ford assumed any liability.

■ The fact that Ford New Holland Canada is a subsidiary of defendant Ford does not aid plaintiffs. A subsidiary corporation is one in which another corporation, a parent corporation, owns the majority of shares of its stock. Black's Law Dictionary 1280 (5th ed. 1979). Ownership by a parent corporation of the stock of another corporation does not create an identity of corporate interest between the two corporations so as to render acts by one to be the acts of another. *Inn Operations, Inc. v. River Hills Motor Inn Co.*, 261 Iowa 72, 83–84, 152 N.W.2d 808, 815 (1967). Under ordinary circumstances, a subsidiary corporation is treated as an entity separate from its stockholders or in this case the parent corporation. *See id.* at 84, 152 N.W.2d at 815–16. As a result, "the separate corporate personality enables corporate stockholders to limit their personal liability...." *Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 809 (Iowa 1978).

Exceptions to the general rule of limited stockholder liability do exist which allow piercing of the corporate veil to impose liability on stockholders in certain circumstances. *Id.* at 810. Courts have disregarded the separate corporate personalities of parent and subsidiary corporations in certain circumstances to prevent the par-

ent corporation from perpetuating a fraud, evading just responsibility, or defeating public convenience. *Inn Operations*, 261 Iowa at 84, 152 N.W.2d at 815.

■ Applying the above law to this case, we consider defendant Ford to be a separate corporate entity that can be held liable only if justification exists to pierce the corporate veil to impose liability on defendant Ford as stockholders of Ford New Holland Canada. The record contains no evidence that Ford committed any acts which fall within one of the exceptions allowing the imposition of liability upon defendant Ford as the majority stockholder. Consequently, we conclude that the record does not contain substantial evidence that defendant Ford assumed responsibility for the product liability claims of Versatile.

Plaintiffs urge that Ford should be estopped from asserting that it is not the corporate entity which is responsible for the product liability claims of Versatile. They assert that Ford's evasive answers to plaintiffs' interrogatories suggest that Ford was responsible for the product liability claims in this case. Plaintiffs further claim that if Ford was improperly named a defendant in this suit, Ford's remedy was by pretrial motion. We do not agree with either of these contentions.

■ This is not the appropriate time for plaintiffs to complain about defendant's answers to their interrogatories. It is obvious from reading Ford's answers to Interrogatories 17 and 18, that Ford did not specifically answer the questions. Rather than being dishonest, Ford's answers were evasive and incomplete. Plaintiffs did nothing to protect themselves, however. Plaintiffs' remedy is found in Iowa Rule of Civil Procedure 134, entitled "Failure to Make Discovery; Consequences." If interrogatory answers are obviously incomplete and evasive, the interrogating party should not be allowed to wait until the close of evidence at trial to request the sanction of estoppel to raise a defense be imposed on the answering party. Consequently, we reject plaintiffs' claim of estoppel.

■ Also, we do not believe that Ford was required to file a pretrial motion claiming it was not responsible for Versatile's product liability claims. In its answer, Ford denied that it was a successor in interest to Versatile. The burden of proof was then on plaintiffs to establish that defendant Ford had agreed to assume the product liability claims of Versatile.

■ We believe this issue requires a factual hearing and cannot be settled by a motion to dismiss or strike. Plaintiffs cite *McCall v. Pitcairn*, 232 Iowa 867, 871, 6 N.W.2d 415, 418 (1942), as authority for the proposition that if a defendant claims it was not the proper party, its remedy was by pretrial motion and the defendant is then estopped to raise this claim at the close of evidence. In *McCall*, this court held that under the evidence presented, defendant railroad receivers were operating the railroad and were responsible for plaintiff's claim. *Id.* Additional language regarding the timing of defendant's claim of improper joinder and estoppel were unnecessary to the decision in *McCall* and does not bind us now.

In sum, we disagree with both of plaintiffs' claims of estoppel. The trial court erred in failing to direct a verdict in favor of Ford. Under this ruling we need not consider other matters raised by defendant Ford.

II. *Duties of occupier of land.* Plaintiffs alleged in their petition that defendant Deitchler was negligent in failing to have a guard on the loading end of the grain auger and in failing to warn Bernard of this defect. At the close of evidence, Deitchler moved for a directed verdict claiming plaintiffs did not present substantial evidence of a breach of duty. Deitchler urges that as an occupier of land he owed no duty of care to a business invitee because the condition of the auger was open and obvious and Bernard had actual knowledge of the danger. He claims the trial court's denial of his motion was error.

■ We first review the duties of an occupier or possessor of land and a business invitee. The occupier of land is under a duty of reasonable care to keep the prem-

ises in a reasonably safe condition for business invitees. *Konicek v. Loomis Bros., Inc.*, 457 N.W.2d 614, 618 (Iowa 1990). We acknowledged limitations on this rule, however, by stating that:

> The possessor of land, however, is not liable when the injuries sustained by a business invitee were caused by a known or obvious danger. The word known denotes "knowledge of the existence of the condition ... [as well as an] ... appreciation of the danger it involves." To appreciate the severity of the danger, the business invitee must recognize the condition as dangerous and understand "the probability and gravity of the threatened harm." An obvious danger "means that both the condition and the risk are apparent to and would be recognized by a" reasonably prudent person.

*Id.* (citations omitted); *see also Nichols v. Westfield Indus., Ltd.*, 380 N.W.2d 392, 400–01 (Iowa 1985). The American Law Institute also discusses this limitation as follows:

> In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

Restatement (Second) of Torts § 343A cmt. e (1965).

■ The record reveals that Bernard has lived on a farm all of his life. In addition to his farming operation, he has been a grain trucker for several years. He has hauled all of Deitchler's beans for several years and was familiar with Deitchler's auger and knew that the loading end of the auger was open and had no safety screen. He admitted that the open auger was dangerous.

As a trucker, Bernard was not involved in the operation of the auger. His duty was to position the truck under the auger, uncover the canvas, and wait for the truck to be filled. His truck was sixty-one feet from the open end of the auger. Prior to the accident, he decided to check the loading end of the auger and walked within three feet of it. He knew not only that the ground was hard and covered with beans, but also that the beans were round and slippery. In addition, he was aware of the dangers of being close enough to touch the auger during its operation. Bernard slipped on the beans and fell into the open auger. This evidence shows that Bernard knew of the auger's condition and its dangers. We conclude that when Bernard voluntarily walked in the vicinity of the open auger, he assumed the risk of harm. Under these circumstances, Deitchler owed no duty of care to Bernard.

■ Plaintiffs argue that Deitchler should have anticipated that the unguarded auger could cause injury to Bernard. In *Konicek*, we noted that in some cases the possessor of land will not be relieved from liability caused by a known and obvious danger if the possessor can and should anticipate that the dangerous condition would cause physical harm to an invitee. 457 N.W.2d at 618. In *Konicek*, we gave examples of those instances in which the possessor of land may be held liable. Liability may be imposed upon a possessor of land in those instances in which the possessor of land may have reason to expect that the invitee's attention may be distracted, or that the invitee will proceed to encounter the known and obvious danger because the advantage of doing so would outweigh the apparent risk to a reasonable man in the invitee's position. *Id.* (citing Restatement (Second) of Torts § 343A cmt. f (1965)).

■ This case does not present a factual situation which falls within the exceptions discussed in *Konicek*. There is no evidence that Deitchler could anticipate that Bernard's attention would be distracted or that Bernard would leave the truck and walk approximately sixty feet to the area of the open auger. This is not a situation in which the invitee would be placed in the area of danger because his work or duties required him to be there. Bernard could gain no advantage in his job by entering the area of danger. The facts here do not fall within one of the exceptions but rather fall squarely within the general rule that a possessor of land is not liable for obvious or known dangers. Consequently, we hold that the trial court erred in not directing a verdict in favor of both defendants.

We need not discuss the other claims of error.

III. *Summary.* We conclude that the trial court erred in failing to direct a verdict in favor of both defendants. Consequently, we reverse the trial court.

REVERSED.

All Justices concur except LAVORATO, J., who dissents and is joined by LARSON, J.

LAVORATO, Justice (dissenting).

For reasons that follow I dissent to division II.

A possessor of land has a duty to use reasonable care to keep the premises in a reasonably safe condition for business invitees. This duty requires the possessor to use reasonable care to ascertain the actual condition of the premises. This duty also requires the possessor to make the premises reasonably safe or to give warning of the actual condition and risk involved. *Konicek v. Loomis Bros., Inc.*, 457 N.W.2d 614, 618 (Iowa 1990); Restatement (Second) of Torts § 343 comment d [hereinafter Restatement].

However, the possessor of land is not liable if the invitee's injuries are caused by a known or obvious condition. *Konicek*, 457 N.W.2d at 618; Restatement § 343A. There are, however, circumstances in which the possessor can and should anticipate that the dangerous condition will cause physical harm to the invitee even though the dangerous condition is known or obvious. In these circumstances the possessor still has a duty to warn or protect the invitee against the dangerous condition. *Konicek*, 457 N.W.2d at 618; Restatement § 343A comment f.

One such circumstance in which the possessor should expect harm to the invitee from known or obvious dangers may arise

> where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantage of doing so would outweigh the apparent risk.

*Konicek*, 457 N.W.2d at 618 (quoting Restatement § 343A comment f). I think this determination is peculiarly a fact question for the jury to decide. In this circumstance, the fact that the danger is known or obvious goes to the question of what percentage of fault should be assigned to the invitee. But the fact that the danger is known or obvious *is not conclusive* in determining the possessor's duty or whether the possessor has acted reasonably under the circumstances. *Konicek*, 457 N.W.2d at 618; Restatement § 343A comment f.

On a motion for directed verdict, we view the evidence in the light most favorable to the party against whom the motion is made. In doing that here, I think the plaintiffs generated a jury question on whether the defendant Deitchler should have anticipated Bernard D. Schnoor's approach to the auger. I say this for several reasons.

First, Schnoor and Deitchler were friends. It is inconceivable to me—as I am sure it would be to a jury—that Deitchler would not anticipate that Schnoor would stand around the auger and visit with Deitchler during the loading process. Deitchler's own testimony suggests this:

> Q. Mr. Deitchler, on the diagram that's up on the board there, and maybe you still have your pointer there, during the time that the first wagon was being unloaded, in what area was Mr. Schnoor standing? Would you show us? A. (Witness complied.)

Q. So he would have been to the west of where the actual auger was running? A. Yes.

Q. Now, that wasn't unusual, was it, that he would be in the area of where the augering was being done? A. No, it was not.

Q. Not only not unusual for him, but I assume if you had other people around when augering was being done, they might stand in the area where it was being done? A. Yes, they would.

Second, Schnoor testified that one of his duties was to make sure the auger did not overload his truck. This task would necessarily place Schnoor close to the wagon. This was not the first time that Schnoor had been on the premises for the same reason he was there this time. So the jury could—I think—reasonably find that Deitchler would have been aware of this necessary task and should have anticipated Schnoor's approach to the auger.

Last, according to Schnoor, Deitchler had left the auger to move a grain wagon to the auger for loading. That left only Schnoor to make sure the loading was proceeding properly. When Deitchler left the auger, Schnoor was standing ten to fifteen feet from the auger, watching the loading process. At this point, Schnoor walked up to the auger to see how full the auger was running. This is when the accident happened. Again, I think a jury could reasonably find that Deitchler should have anticipated Schnoor's approach to the auger.

Schnoor testified that he did not think he was at risk in approaching to the point he did before slipping into the auger. To a reasonable person in Schnoor's position, the advantages in doing so would appear to outweigh the apparent risk. The jury could reasonably find that Deitchler should have anticipated this. The majority's error is in deciding this issue as a matter of law.

I would affirm as to the defendant Deitchler.

LARSON, J., joins this dissent.