Gary KONICEK and Judy Konicek, Individually, and Jeremy and Kassandra Konicek, Individually, and Jeremy and Kassandra Konicek, by Gary Konicek, their Father and Next Friend, Appellees,

v.

LOOMIS BROTHERS, INC., Appellant.

No. 89–567.

Supreme Court of Iowa.

June 20, 1990.

David A. Elderkin and Edward M. Blando of Elderkin and Pirnie, Cedar Rapids, for appellant.

Richard A. Pundt, Jon Kinnamon, and Philip A. Hershner of Kinnamon, Kinnamon, Russo & Meyer, Cedar Rapids, for appellees.

Considered by HARRIS, P.J., and SCHULTZ, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

The plaintiff here is an employee of an independent contractor. A general contractor hired the plaintiff's employer to roof a building under construction. The plaintiff fell while working on the roof and sustained severe injuries. The plaintiff then sued the general contractor. At trial the district court submitted to the jury four theories of recovery. Answering special verdict forms as to each theory, the jury found that the plaintiff had established all four of them.

The general contractor has appealed, claiming that none of the theories should have been submitted to the jury. We consider only one theory because we think there was sufficient evidence to support a verdict on that theory. We therefore affirm.

In April 1985 Loomis Brothers, Inc.—the defendant—contracted with Cornell College in Mount Vernon to build a sports learning center. The contract provided that Loomis would act as the general contractor of the project.

Loomis then subcontracted with Cliff Abild Construction Co. to roof the center. Gary Konicek—the plaintiff—was a construction employee of Abild.

The roof was designed to have between sixty-eight to ninety skylights, and each skylight was to measure two feet by eight feet. These skylights were not placed in a simple, regular pattern in one area of the roof. Instead the skylights appeared in an irregular pattern over the entire roof.

It was about forty feet from the top of the roof to the ground. The roof was fairly flat.

When Abild came on the job site, about three-quarters of the steel decking for the roof was in place. The holes for the skylights had been made in the decking.

Before Abild began its work, James Caswell—Loomis' construction superintendent—asked Abild's foreman if Abild was going to cover the exposed skylights. The foreman insisted the roofing could not be done with the skylights covered. So when the Abild roofers began their work, no covers or protective devices were used.

While Abild was working on the facility, Loomis employees laid soundproofing insulation on the roof. After this insulation was in place, Abild employees laid a vapor barrier over the insulation to keep the wind from blowing out the insulation. A vapor barrier consists of six-foot-wide strips with tinfoil on the top and brown paper on the bottom. Once the vapor barrier was in place, Abild employees would then install the remaining roofing layers.

Konicek testified to the procedure the roofers used to lay the vapor barrier:

Just started wherever the roll was at, either at the top or the bottom. Somebody would hold it down at the bottom or tape it at the top. You can tape [the vapor barrier] and roll it. You can start taping up your seams and you just run it out the full length of the roof, cut it off and finish taping it and turn it around and come back down.

Because the vapor barrier covered the skylight openings, the roofers would cut out the openings so that the openings could be seen.

Shortly after Abild began working on the roof, another Abild roofer, Donnie Ellison, fell through a skylight while laying the vapor barrier. Ellison stepped through a skylight that he had just covered with the vapor barrier. Ellison was able to catch himself on an X-brace in the corner of the skylight and avoided falling to the ground.

Immediately after this incident, Konicek told his foreman, Dennis Burkle, that some protective measures were needed. Konicek suggested covering the skylights with a support platform that would attach to the inside of the skylights. Burkle, however, did not follow Konicek's suggestion. Loomis' construction superintendent learned about Ellison's mishap, but he too did nothing.

On March 26, 1986, Konicek fell through a skylight while on the roof of the sports learning center. Just before he fell, Konicek had been rolling a strip of the vapor barrier from the top of the roof directly over and ten feet past a skylight. Konicek then asked a coworker to throw him a piece of wood so he could block the material and cut out the skylight opening.

As Konicek walked toward the skylight, a gust of wind blew the vapor barrier off the roof decking. In his words, Konicek stepped down on the strip, "out of reflexes." Unfortunately, the area he stepped down on was the skylight opening. He went through the material and into the opening of the skylight. He was able to grab the sides of the skylight, but he could not hold on and fell to the ground. As a result of the fall, Konicek suffered various injuries to his head, back, legs, and arms.

On cross-examination, Konicek was asked whether he knew where the hole was and how he intended to find it:

Q. Okay. And the hole is two feet wide and the roll was, I believe you said, six foot wide; correct? A. Correct.

Q. And you had a pretty good idea where that hole was, didn't you? A. Yeah. It was someplace in the middle.

Q. How did you intend to find it? A. If the wind hadn't picked it up, with the roof being completely on, if there is any wind blowing, it just blows it up. There is an updraft coming through the openings of the skylights. Most of the time on the rest of the skylights that we had done, it wasn't blowing. The wind wasn't that bad where it would pick it up and blow it off, you could see right where it was at, you could see the indentations of the angle iron frame providing the vapor barrier was lying flat. As I walked around, it wasn't a planned thing to step down on this paper, it was a reflex. I walked around, the wind picked it up, I stepped on it, there was nothing underneath it. I had no control over the wind blowing, out of sight, out of mind, the hole was completely out of sight. There was no way of knowing where the hole was or even think I knew where I was at on the roof when the paper blew up. It was a reflex, step over, put the vapor barrier back on the roof so it doesn't blow off.

After Konicek fell, Abild placed protective frames in the skylight openings. These were put in place before any additional vapor barriers were laid.

Because of his injuries, Konicek received workers' compensation benefits from Abild. Consequently, Konicek did not file a personal injury action against Abild. Konicek did, however, sue Loomis, the general contractor, and alleged negligence as the basis for his suit. Konicek premised his negligence claim on three grounds:

1. Failure to provide a reasonably safe work place;

2. Failure to respond to complaints about hazardous conditions existing at the work site;

3. Failure to comply with state and federal Occupational Safety and Health Administration regulations.

Konicek's petition also contained claims on behalf of his wife and his two minor children for loss of consortium.

After filing its answer, Loomis moved for a summary judgment. In support of its motion, Loomis contended that as a general contractor, it owed no specific duty to Konicek, an employee of the subcontractor. Loomis contended that a general contractor can only be held liable for injuries suffered by a subcontractor's employee when: (1) the general contractor retains control over the work of the subcontractor and its employees; (2) the work performed constitutes a peculiar risk; (3) the general contractor assumed a duty to provide specified safeguards and precautions for the safety of others by statute, regulation or contract;

and (4) the general contractor owes a duty to a subcontractor's employees as business invitees.

These conditions, argued Loomis, did not exist in Konicek's case. So Loomis asserted that as a matter of law a summary judgment in its favor was required. The district court overruled Loomis' motion. The case proceeded to a jury trial. At the close of the evidence, Loomis moved for directed verdict which the district court overruled.

The district court then submitted the case to the jury on all four theories raised in Loomis' motion for summary judgment. The jury answered that Loomis was negligent on the basis of all four theories. In addition, the jury assessed no fault to Konicek.

The jury then found that Konicek was entitled to damages of $849,008 on his claim, that his wife was entitled to damages of $125,000 on her spousal consortium claim, and that the children were entitled to $40,000 on their parental consortium claim.

Following trial Loomis moved for a judgment notwithstanding the verdict and for new trial. *See* Iowa R.Civ.P. 243 and 244. Loomis asserted that none of the four theories should have been submitted to the jury.

The district court overruled the motion for judgment notwithstanding the verdict and for new trial. Loomis appealed, again contending that none of the four theories should have been submitted to the jury. Loomis asserts here that the district court erred when it overruled Loomis' motion for a judgment notwithstanding the verdict and new trial.

We restrict our discussion to the business invitee theory because we think there was sufficient evidence to support a verdict on this theory.

■■■ I. A judgment notwithstanding the verdict must stand or fall on the grounds stated in the motion for directed verdict. On appeal, our review is limited to those grounds. *Johnson v. Dodgen,* 451 N.W.2d 168, 171 (Iowa 1990).

■■ When considering a motion for judgment notwithstanding the verdict, the district court must view the evidence in the light most favorable to the party against whom the motion is directed. In reviewing the propriety of the district court's ruling on such a motion, we also view the evidence in the same manner. Simply put, we ask, was there sufficient evidence to generate a jury question? These are the same principles that the district court is bound to follow on a motion for a directed verdict. *Id.*

One of the grounds for a new trial is that the verdict is not supported by sufficient evidence. Iowa R.Civ.P. 244(f).

■■■ Loomis' motion for judgment notwithstanding the verdict and for new trial raises, among other things, the issue whether there was sufficient evidence to support a verdict under the business invitee theory. Loomis made the same assertion in its motion for directed verdict. So the issue was properly preserved for our review.

II. Section 384 of the Restatement of Torts (Second) (1964) defines the liability of a general contractor who erects a structure on behalf of a possessor of land:

> One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge.

Comment a to this section provides in part:

> This Section applies to a person who on behalf of the possessor of land erects thereon a structure or creates any other artificial condition, whether in so doing he is acting as the possessor's servant or as an independent contractor and whether he does the work for reward or gratuitously.

*Accord Mundy v. Warren,* 268 N.W.2d 213, 216–17 (Iowa 1978).

■ A business invitee is one "who is invited to enter or remain on land for the purpose directly or indirectly connected with business dealings with the possessor of land." Restatement (Second) of Torts § 332 [hereinafter Restatement]; *accord Greenwell v. Meredith Corp.*, 189 N.W.2d 901, 905 (Iowa 1971). Employees of independent contractors—like Konicek—are included within this business invitee classification. *Greenwell*, 189 N.W.2d at 905.

■ The possessor of land is under a duty to use ordinary care to keep the premises in a reasonably safe condition for business invitees. *Id.* This duty requires the possessor to use reasonable care to ascertain the actual condition of the premises. The duty also requires the possessor to make the area reasonably safe or to give warning of the actual condition and risk involved. Restatement § 343 comment d; *accord Greenwell*, 189 N.W.2d at 905.

■ The possessor of land, however, is not liable when the injuries sustained by a business invitee were caused by a known or obvious danger. Restatement § 343A; *accord Greenwell*, 189 N.W.2d at 905. The word known denotes "knowledge of the existence of the condition ... [as well as an] ... appreciation of the danger it involves." Restatement § 343A comment b; *accord Greenwell*, 189 N.W.2d at 906. To appreciate the severity of the danger, the business invitee must recognize the condition as dangerous and understand "the probability and gravity of the threatened harm." Restatement, § 343A comment b; *accord Greenwell*, 189 N.W.2d at 906. An obvious danger "means that both the condition and the risk are apparent to and would be recognized by a" reasonably prudent person. Restatement § 343A comment b; *accord Greenwell*, 189 N.W.2d at 906.

In some cases, though, a possessor of land will not be relieved of liability for injuries caused by a known and obvious danger. If the possessor "can and should anticipate that the dangerous condition will cause physical harm to the [business] invitee [despite] its known or obvious danger," the possessor still owes the invitee a duty. Restatement § 343A comment b; *accord*

*Greenwell*, 189 N.W.2d at 906. The possessor's duty in these circumstances is either to warn the invitee or to make the condition reasonably safe. Restatement § 343A comment f. *Accord Mundy*, 268 N.W.2d at 218; *Greenwell*, 189 N.W.2d at 906.

Several circumstances may exist that trigger the possessor's duty even though the condition is obviously dangerous. For instance, the possessor "may [have] reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Restatement § 343A comment f; *accord Greenwell*, 189 N.W.2d at 906.

Or there may be a situation "where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantage of doing so would outweigh the apparent risk." Restatement, § 343A comment f. An obvious example of the latter circumstance concerns an employee who encounters a known and obvious risk because to do otherwise would cost the employee his or her job. *See* Restatement § 343A comment f, illustration 5.

In these cases "the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged" with a percentage of fault. Restatement, § 343A comment f. This fact, however, is not "conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances." *Id.*

Here Konicek was an employee of an independent contractor. So he was correctly identified by the district court as a business invitee.

■ Cornell College hired Loomis to construct the center on the college's land. So Loomis had the same duty of care to business invitees as Cornell College had.

■ For the reasons that follow, we think the evidence generated a jury ques-

tion as to Loomis' duty to Konicek. Viewing the evidence in the light most favorable to Konicek, we think the jury could find that the danger posed by the open skylights was known and obvious not only to Konicek but to Loomis as well. Any reasonable person would realize that working on a roof forty feet from the ground with a number of uncovered and irregularly spaced skylights was dangerous.

Loomis recognized this danger at the start because a Loomis representative asked Abild's foreman whether covers would be placed on the skylights. It was apparent from Konicek's testimony that he too recognized and understood the probability and gravity of the danger and comprehended the attendant risks. There was no doubt in anyone's mind about the danger after Ellison's near injury.

The jury, however, could also find from the evidence that despite this obvious danger, Loomis should have anticipated that the uncovered skylights could cause injury to the Abild roofers. As we said, the dangerous condition posed by the uncovered skylights was just as obvious and known to Loomis as it was to Konicek. Konicek testified that the wind made it impossible for him to see the open skylight through which he fell because the vapor barrier would not lie flat. The hole was "out of sight, out of mind" when he stepped through it. A number of open skylights covered the roof, and they were irregularly spaced. Given these facts and the weather conditions, it would seem reasonable for Loomis to expect that Abild's roofers would become distracted and momentarily forget the danger or not see where the open skylights were.

Finally, Loomis knew that Abild made the decision to roof without covering the skylights. Certainly Loomis could anticipate that the Abild roofers would probably proceed in the face of obvious danger, knowing that if they failed to do so, they could lose their jobs.

Under all these circumstances the jury could find that *any* warning would have been inadequate, leaving Loomis only one alternative: covering the skylights.

The very nature of this discussion suggests that all these matters are jury questions. *See Mundy*, 268 N.W.2d at 218. To prove error Loomis must convince us that these matters were established against Konicek as a matter of law. We are not convinced.

III. Loomis raises several other issues. We have considered these issues and find that they have no merit.

We conclude the district court did not err when it overruled Loomis' motion for judgment notwithstanding the verdict and new trial. We affirm.

AFFIRMED.