Laura M. BREWSTER, Plaintiff,

v.

UNITED STATES of America,
Defendant/Third–Party
Plaintiff,

v.

TAYLOR INDUSTRIES, INC.,
Third–Party Defendant.

No. 4–91–CV–30702.

United States District Court,
S.D. Iowa,
Central Division.

Aug. 17, 1994.

Richard L. Richards, Asst. U.S. Atty., Des Moines, IA, for U.S.

Richard G. Blane, II, West Des Moines, IA, for plaintiff.

William L. Dawe, Des Moines, IA, for third party defendant Taylor Industries, Inc.

## ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

BENNETT, United States Magistrate Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ................................................ 1380
II. FINDINGS OF FACT ......................................... 1380
III. CONCLUSIONS OF LAW ................................... 1381
   A. Standards for Summary Judgment ................ 1381
   B. Federal Tort Claims Act ............................. 1383
   C. Defendant United States' Motion for Summary Judgment ... 1383
      1. Brewster's Claims Against the United States ... 1383
      2. Brewster's Claim of Specific Negligence ... 1383
         a. Sufficiency of Brewster's Affidavits ... 1384
         b. Fed.R.Evid. 801(d)(2)(D) ... 1385
      3. General Negligence and *Res Ipsa Loquitur* ... 1387
      4. Certified Question ... 1389
   D. Third–Party Defendant Taylor's Motion for Summary Judgment ... 1390
      1. Assertion of Both Breach of Warranty and Strict Liability Claims ... 1390
      2. General Negligence Claim ... 1390
      3. Expert Testimony ... 1390
IV. CONCLUSION ................................................. 1391

This litigation arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80. Plaintiff Laura Brewster alleges she was seriously injured when she was knocked down by a malfunctioning automatic door in the emergency room of the Veterans Administration Medical Center ("VAMC") in Des Moines, Iowa on January 29, 1990. Brewster was at the VAMC because she had driven her husband to the VAMC emergency room. Brewster asserts claims for general and specific negligence against the United States. The United States has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on each of Brewster's claims. Brewster's affidavits resisting the United States' summary judgment motion would, on their face, generate a material question of fact. The affidavits allege that unidentified employees of VAMC made statements to Brewster's sisters that VAMC had experienced prior problems with the automatic door. The United States challenges the core assertions in these affidavits as inadmissible hearsay and asserts that without the hearsay admissions Brewster has failed to generate a material question of fact concerning the liability of the United States. The Third–Party Defendant, Taylor Industries, Inc. ("Taylor"), who assembled and installed the automatic door at issue, has also moved for summary judgment against the United States. Taylor asserts in its summary judgment motion that the United States has failed to generate a material question of fact on its claims seeking indemnity and contribution against Taylor on theories of negligence, strict liability and breach of implied warranties of merchantability and fitness.

### I.   INTRODUCTION

On May 25, 1994, the parties filed a Consent to Proceed Before a United States Magistrate Judge Pursuant to 28 U.S.C. § 636(c). Pending before the court are Third–Party Defendant Taylor's Motion for Summary Judgment against the United States and Defendant/Third–Party Plaintiff The United States' Motion for Summary Judgment against Plaintiff Brewster. These two motions came on for hearing on July 25, 1994. Assistant United States Attorney Richard L. Richards appeared for the United States. Richard G. Blane II appeared for Plaintiff and William L. Dawe appeared for Third Party Defendant Taylor. The parties have now filed post-hearing briefs and these summary judgment motions are now fully submitted.

For the reasons set forth in this opinion, Third Party Defendant Taylor Industries, Inc.'s Motion for Summary Judgment against the United States is granted because the United States has failed to generate a material question of fact concerning any of its three claims against Taylor Industries, Inc. The United States' summary judgment motion on Brewster's claim of specific negligence is granted because Brewster's resistance and affidavits, absent the hearsay statements of Brewster's sisters, fail to generate a question of material fact. The United States summary judgment motion concerning Brewster's claim of general negligence and *res ipsa loquitur* is deferred pending certification to the Iowa Supreme Court. The certified question raises an issue of first impression in Iowa on which the highest courts of other states have reached contradictory opinions.

### II.   FINDINGS OF FACT

For the purposes of these summary judgement motions only, the court finds the following facts:

1. In 1982, an addition to the VAMC in Des Moines was constructed. The addition houses the VAMC's emergency room.

2. The construction project was designated as Project No. 555–041 ("the Project"), and a contract for the Project was let to general contractor Vawter & Walter, Inc.

3. As the general contractor Vawter & Walter secured the services of Taylor as a subcontractor for the Project. As a subcontractor for the Project, Taylor was responsible for assembling and installing all automatic doors.

4. The automatic doors to the Project were installed subject to particular specifications. The specifications for the automatic doors included, *inter alia*, that the doors to the emergency rooms were to be controlled by overhead mounted detectors with time delay switches. The time delay switches were to be adjustable between 3 to 60 seconds. The doors were also required to be equipped with an "electric eye" in order to prevent the doors from closing when an individual is standing in the center of the door.

5. Taylor assembled and installed the Project's automatic doors. Taylor installed time delay switches on automatic door number five which were set at a fixed time interval.

6. Taylor provided services on the automatic doors on two occasions after their installation and prior to Brewster's accident. Taylor serviced the track guide in March of 1987. In July 1988, Taylor was called upon to install a new floor-mounted brace assembly. On both occasions the doors involved in the incident at the center of this case were operating normally and complied with all industry standards.

7. Automatic door number five has, at all relevant times, had a warning sign which reads: "CAUTION" "AUTOMATIC DOORS" "IN CASE OF EMERGENCY PUSH."

8. On January 29, 1990, Plaintiff Laura Brewster drove her husband, James Brewster, to the emergency room at the VAMC.

9. After James was taken into the emergency room, Laura stayed with her sister, Dorothy Mayo, in the vestibule area.

10. Laura asked Mayo to move her car from the emergency room entrance.

11. When Laura went out to check on her sister, the sliding door leading into the vestibule area opened as Laura approached it. Laura entered the doorway at a normal rate of speed, and did not stop.

12. The automatic doors closed on Laura, pinning her between them.

13. After attempting to open the doors with her hands, the doors opened, and Laura

fell backwards against a wall and then to the floor. When Laura fell to the floor she heard a crack.

14. VAMC employees took Laura to the emergency room at VAMC.

15. X-rays revealed that Laura suffered a broken hip.

16. While Taylor serviced the automatic doors involved in the accident with Laura on two occasions since their installation, Taylor had no service agreements or maintenance contracts with VAMC for its automatic doors. Instead, Taylor provides maintenance or service on a call as needed basis.

17. The door system was installed properly and, at the time of Laura's accident, was in compliance with the applicable design and safety standards of the American National Standards Institute.

18. When the automatic doors were installed by Taylor, a representative of Taylor showed an employee at VAMC how to operate and maintain the door system and how to adjust the door's time delay.

19. VAMC maintenance personnel attended to the routine or normal daily maintenance of the automatic doors.

20. Following the accident, Taylor installed time adjustable switches to the automatic doors at VAMC.

## III. CONCLUSIONS OF LAW

### A. Standards for Summary Judgment.

The standard for granting summary judgment is firmly established. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990) (citing Fed.R.Civ.P. 56(c)); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990).[1] A court considering a

---

1. An issue of material fact is genuine if it has a   real basis in the record. *Hartnagel v. Norman,*

motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, and give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991).

The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini,* 900 F.2d at 1238. The Eighth Circuit, however, also follows the principle that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553). The moving party is not required by Rule 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. A nonmoving party is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The necessary proof that the nonmoving party must produce is not precisely measurable, but it must be "enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983) (quoting *Admiral Theatre Corp. v. Douglas Theatre Co.,* 585 F.2d 877, 884 (8th Cir. 1978)), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986).

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law". *Celotex,* 477 U.S. at 323, 106 S.Ct. at

953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). A genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier ·of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to a brief overview of the Federal Tort Claims Act and to an analysis of the United States and Taylor's pending summary judgment motions.

### B. Federal Tort Claims Act.

■ The United States is immune from suit unless it has consented to be sued. *United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). The United States Supreme Court has held that Congress may impose those conditions on a waiver of sovereign immunity as it deems appropriate. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976). The FTCA "is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private person for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976); *see also Layton v. United States,* 984 F.2d 1496, 1499 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 213, 126 L.Ed.2d 170 (1993); 28 U.S.C. § 2674.[2]

■ As 28 U.S.C. § 2674, in conjunction with the jurisdictional grant over FTCA cases in 28 U.S.C. § 1346(b), makes clear "the extent of the United States' liability under the FTCA is generally determined by reference to state law." *Molzof v. United States,* 502 U.S. 301, ——, 112 S.Ct. 711, 714, 116 L.Ed.2d 731 (1992); *see, e.g. United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 1852–53, 10 L.Ed.2d 805 (1963); ·*Richards v. United States,* 369 U.S. 1, 6–10, 82

S.Ct. 585, 589–91, 7 L.Ed.2d 492 (1962); *Rayonier, Inc. v. United States,* 352 U.S. 315, 318–19, 77 S.Ct. 374, 376–77, 1 L.Ed.2d 354 (1957); *Indian Towing Co. v. United States,* 350 U.S. 61, 64–65, 68–69, 76 S.Ct. 122, 124–25, 126–27, 100 L.Ed. 48 (1955); *United States v. Aetna Casualty & Sur. Co.,* 338 U.S. 366, 370, 70 S.Ct. 207, 210, 94 L.Ed. 171 (1949). Because VAMC's alleged negligent act giving rise to liability occurred in Iowa, Iowa law governs the substantive law to be applied herein. *Prior v. United States Postal Serv.,* 985 F.2d 440, 441 (8th Cir.1993); *see also Kruchten v. United States,* 914 F.2d 1106, 1107 (8th Cir.1990).

### C. Defendant United States' Motion for Summary Judgment.

**1. Brewster's Claims against the United States.** For the purposes of these motions the court construes Brewster's complaint as alleging claims against the United States on the grounds of specific and general negligence. The general negligence claim is based upon the doctrine of *res ipsa loquitur.* However, before addressing Brewster's general negligence claim, the court will focus on those issues related to Brewster's specific negligence claim.

**2. Brewster's Claim of Specific Negligence.** Defendant United States contends in its motion for summary judgment that there are no questions of material fact regarding whether the VAMC met its standard of care in the operation of the emergency room's sliding doors.

■ "Under Iowa law the scope of the duty of care which a possessor of land owes to an entrant is based upon the entrant's status as either a trespasser, licensee, or invitee. · An invitee is a person who enters or remains on land open to the public by invitation or permission and is owed the highest standard of care." *Morgan v. Perlowski,* 508 N.W.2d 724, 727 (Iowa 1993). "The occupier of land is under a duty of reasonable care to keep the premises in a reasonably safe condition for business invitees." *Schnoor v.*

---

**2.** 28 U.S.C. § 2674 provides, *inter alia:*

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

*Deitchler,* 482 N.W.2d 913, 916–17 (Iowa 1992); *See Konicek v. Loomis Bros., Inc.,* 457 N.W.2d 614, 618 (Iowa 1990).[3] A landowner is liable to an invitee if the landowner: "(a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to an invitee, and (b) should suspect that an invitee will not discover or realize the danger, or will fail to protect himself from it." *Byers v. Contemporary Indus. Midwest,* 419 N.W.2d 396, 397 (Iowa 1988); *see Hanson v. Town & Country Shopping Ctr.,* 259 Iowa 542, 546–49, 144 N.W.2d 870, 873–75 (1966); *see also Mundy v. Warren,* 268 N.W.2d 213, 217 (Iowa 1978).[4]

Laura Brewster was an invitee on the VAMC's premises because her purpose for entering the emergency room facilities was to secure the services of the VAMC for her husband. *See Konicek,* 457 N.W.2d at 618. Defendant United States, therefore, owed Brewster the duty to exercise ordinary care to keep the VAMC's facilities, including its automatic doors in a reasonably safe condition and to warn her of hidden dangers or unsafe conditions of which it had knowledge. *Id.*

### a. Sufficiency of Brewster's Affidavits.

The fighting issue as framed by the parties' briefs and arguments concerns the legal sufficiency of Brewster's affidavits in resistance to the United States' summary judgment motion. Brewster seeks to generate a question of material fact, through the submission of affidavits of her two sisters, Hester F. Maxwell and Dorothy E.F. Mayo, as to whether the United States breached its duty to Brewster by failing to warn her of unsafe conditions. Maxwell and Mayo's affidavits indicate the United States knew or should have known of previous malfunctions of the automatic doors because of prior accidents which occurred at VAMC concerning the door in question. The United States, on the other hand, asserts that it had received no such reports of prior incidents which would have put them on notice about the dangers of the automatic doors at VAMC's emergency room. The United States further asserts that because the affidavits submitted by Brewster in resistance to its motion contain impermissible hearsay statements, which are at the heart of Brewster's resistance, the court may not consider these affidavits in ruling upon the United States' motion.

■ Federal Rule of Civil Procedure 56(e) specifies the form of the affidavits which may be employed in summary judgment procedures and requires that they be made on personal knowledge, setting forth such facts as would be admissible in evidence. The affidavits of Brewster's sisters do not meet these criteria. Rather, the affidavits are based on hearsay and contain only conclusory allegations that accidents have occurred involving the automatic doors at the VAMC.[5] The law is well settled in this cir-

3. "A business invitee is one 'who is invited to enter or remain on land for the purpose directly or indirectly connected with business dealings with the possessor of land.'" *Konicek,* 457 N.W.2d at 618 (quoting Restatement (Second) of Torts § 332).

4. A corollary to the general rule is that

The possessor of land, however, is not liable when the injuries sustained by a business invitee were caused by a known or obvious danger. The word known denotes "knowledge of the existence of the condition ... [as well as an] ... appreciation of the danger it involves." To appreciate the severity of the danger, the business invitee must recognize the condition as dangerous and understand "the probability and gravity of the threatened harm." An obvious danger "means that both the condition and the risk are apparent to and would be recognized by a" reasonably prudent person.

*Konicek,* 457 N.W.2d at 618; *Morgan,* 508 N.W.2d at 727; *Schnoor,* 482 N.W.2d at 917.

5. Hester F. Maxwell declares in her affidavit that:

I heard this employee state that there had been two accidents on automatic doors, one over in the other building where a lady suffered a broken shoulder and one on the same door where this lady (Laura) had just been injured ...

Maxwell Aff. at 2.

Similarly, Dorothy E.F. Mayo avers that:

[A] gentleman sitting behind the reception desk, wearing a white uniform with a name tag, and a security guard wearing a uniform, asked me if I was related to the woman who had been injured by the door: I told them I was her sister; these gentlemen stated that an accident report needed to be made out and asked me questions about Laura; it appeared to me that the gentleman in the white uniform

cuit and elsewhere that a party may not rely solely on inadmissible hearsay in opposing a motion for summary judgment. *See Hanke v. Global Van Lines, Inc.,* 533 F.2d 396, 398 (8th Cir.1976) (holding that defendant's attorney's affidavit which appeared to be based on hearsay was entitled to no consideration); *Miller v. Solem,* 728 F.2d 1020, 1026 (8th Cir.) (holding that affidavits containing hearsay statements failed to comply with Rule 56(e)'s requirement that the facts set out in affidavits be admissible in evidence), *cert. denied,* 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984); *McSpadden v. Mullins,* 456 F.2d 428, 430 (8th Cir.1972) (reversing district court's denial of motion to strike affidavit containing hearsay); *Contemporary Mission, Inc. v. United States Postal Serv.,* 648 F.2d 97, 105 n. 11 (2d Cir.1981) (finding that trial court properly disregarded consideration of affidavit which contained hearsay in ruling on motion for summary judgment); *Rossi v. Trans World Airlines, Inc.,* 507 F.2d 404, 406 (9th Cir.1974) (concluding that trial court correctly granted summary judgment for defendant where plaintiff's affidavit contained only inadmissible hearsay which district court could properly disregard); *see also Financial Timing Publications, Inc. v. Compugraphic Corp.,* 893 F.2d 936, 942 (8th Cir.1990) (pointing out that a party may not rely solely on inadmissible hearsay in opposing a motion for summary judgment); *Pink Supply Corp. v. Hiebert, Inc.,* 788 F.2d 1313, 1319 (8th Cir.1986) (declaring that "[w]ithout a showing that admissible evidence will be available at trial, a party may not rely on inadmissible hearsay" when opposing a motion for summary judgment); *Filco v. Amana Refrigeration, Inc.,* 709 F.2d 1257, 1267 (9th Cir.) (holding that deposition testimony concerning statement of defendant's agent constituted inadmissible hearsay), *cert. dis-*

*missed,* 464 U.S. 956, 104 S.Ct. 385, 78 L.Ed.2d 331 (1983); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 924 (2d Cir.1985) (concluding that plaintiff could not rely on inadmissible hearsay in opposing defendant's motion for summary judgment); *Daily Press, Inc. v. United Press Int'l,* 412 F.2d 126, 133 (6th Cir.) (holding that hearsay evidence cannot be considered on a motion for summary judgment), *cert. denied,* 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969).

■ **b.      Fed.R.Evid.      801(d)(2)(D).**

Therefore, unless the hearsay statements contained in the affidavits would fall within any of the exceptions to the hearsay rule set out in the Federal Rules of Evidence, they are not entitled to be considered. Thus, Brewster contends that the statements contained in her sisters' affidavits fall within the hearsay exception carved out by Federal Rule of Evidence 801(d)(2)(D).[6] In order for a statement to be admissible under Rule 801(d)(2)(D), the offering party must make a threefold showing, through evidence independent of the proffered statement, that (1) an employment relationship existed between the declarant and the party, (2) the statement was made during the agency or employment relationship and (3) the statement concerned a matter within the declarant's scope of employment. *Boren v. Sable,* 887 F.2d 1032, 1038 (10th Cir.1989). Therefore, Brewster must demonstrate that the statements she seeks to introduce were made by VAMC employees, and that the statements concerned a matter within the scope of their agency, or employment, *i.e.,* maintaining or repairing VAMC's automatic doors, at the time they were made.

Rule 801(d)(2)(D) represents a departure from the common law. As the Advisory

---

with the name tag was an employee of the Veterans Administration Center; both this employee and the security guard made the statement that this was the third accident that had happened with the automatic door; that she (Laura) was the second accident at this particular door, and that another [sic] women had been caught in another door on the other side of the building and had received a broken shoulder ...

Mayo Aff. at 2. Brewster conceded at the hearing on the motion for summary judgment that

she has been unable to locate or learn the identity of any of the men referred to in her sisters' affidavits.

**6.** Federal Rule of Evidence 801(d)(2)(D) provides that a statement is not hearsay if it is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

Committee Notes indicate, the traditional test was whether the statement was made by the agent within the scope of his employment. The Rules, however, follow a trend which allows statements to be admitted so long as they are related to a matter which is within the scope of the agent's employment. Advisory Committee Notes to 801(d)(2)(D). Assuming that the unidentified employees referred to in Brewster's sisters' affidavits were VAMC employees at the time they made their reported statements, the court must still ascertain whether these persons' statements concerned a "matter within the scope of [his or her] agency or employment" with VAMC since, in order to be admissible, the content of the declarant's statement must have concerned a matter within the scope of his employment or agency. *See e.g. Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566, 572 (8th Cir.1989) (holding in action against airline that the trial court did not abuse its discretion in refusing to admit derogatory remarks of airline employees as vicarious admissions, where employees were non-management personnel who were not involved in decision at center of lawsuit); *Staheli v. University of Miss.*, 854 F.2d 121, 127 (5th Cir.1988) (holding that testimony of fellow accounting professor was not an admission where testimony did not concern matter within scope of his agency). "It is well established that 'Rule 801(d)(2)(D) requires the proffering party to lay a foundation to show that an otherwise excludible statement relates to a matter within the scope of the agent's employment.'" *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1565 (11th Cir.1991) (quoting *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir.1986)).

Here, Brewster has failed to establish that the statements made by the alleged employees of VAMC concerned a matter within the scope of any of the declarant's respective employment with VAMC.[7] The facts of this case are virtually on all four with the Eleventh Circuit's decision in *Wilkinson,* 920 F.2d at 1565. In *Wilkinson,* the plaintiff, a passenger on a cruise ship, was injured when an automatic door closed on her. *Id.* at 1562. Plaintiff introduced testimony, over defendant's objections, from her traveling companion that she had a conversation with a cabin steward, identified only as "Fletcher", in which the steward indicated that "they had been having problems with the door." *Id.* at 1563. Plaintiff contended that "steward Fletcher's statement constituted a vicarious admission by the cruise line through its employee, and was, therefore, not hearsay pursuant to Fed.R.Evid. 801(d)(2)(D)." *Id.* In reversing, the Eleventh Circuit held that the steward's statement did not concern a matter within the scope of his employment and was therefore inadmissible hearsay. *Id.* at 1565–67.[8]

Since Brewster has not shown that any of the statements fall within the hearsay exception of Rule 801(d)(2)(D), it follows that her sisters' affidavits contain inadmissible hearsay. Therefore, the court concludes that because these affidavits do not satisfy Rule 56(e), they are entitled to no consideration in determining the propriety of summary judgment.

Absent the statements found in Brewster's sisters' affidavits, Brewster has come forward with no evidence which would establish a question of material fact that VAMC knew or should have known that the automatic doors to its emergency room constituted an unreasonable risk to patients or visitors to its facilities. The court, therefore, finds that the United States' motion shall be granted as to Plaintiff's specific negligence claim found in Count II of the complaint.[9]

---

7. Indeed, Brewster not only has not been able to identify the individuals who made the statements, but she can only speculate as to these persons' particular job classifications with VAMC.

8. Unlike the situation before this court, the Eleventh Circuit had the benefit of evidence of the employee's title and job description. As noted above, *see* supra note 7, Brewster has not been able to identify the individual employees who purportedly made the statements nor their job classifications.

9. Based upon the arguments at the hearing on the motions for summary judgment, Brewster is also claiming that under the Restatement (Second) of Torts § 343, comment f, the possessor of land owes a duty to invitees to ensure that appliances placed on the land are safe. The court

**3. General Negligence and Res Ipsa Loquitur.** Brewster also asserts that it is entitled to an inference of negligence under the doctrine of *res ipsa loquitur.* Under Iowa law, the general rule is that:

> a party claiming negligence must identify specifically the acts or omissions constituting negligence. The purpose of requiring specification of negligence is to limit the determination of the factual questions arising in a negligence claim to only those acts or omissions upon which a particular claim is in fact based ... The doctrine of res ipsa loquitur is an exception to the general rule.

*Welte v. Bello,* 482 N.W.2d 437, 439 (Iowa 1992) (citing *Rinkleff v. Knox,* 375 N.W.2d 262, 266 (Iowa 1985)). *Res ipsa loquitur* is a rule of evidence, not of substantive law. *See Town of Reasnor v. Pyland Constr. Co.,* 229 N.W.2d 269, 272 (Iowa 1975); *see also Sammons v. Smith,* 353 N.W.2d 380, 385–87 (Iowa 1984); *see also Palleson v. Jewell Co-op. Elevator,* 219 N.W.2d 8, 13 (Iowa 1974); *Wiles v. Myerly,* 210 N.W.2d 619, 624 (Iowa 1973).

▮▮▮▮ *Res ipsa loquitur* applies when (1) the injury is caused by an instrumentality under the exclusive control of the defendant, and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used. If there is substantial evidence to support both elements, the happening of the injury permits—but does not compel—an inference that the defendant was negligent.

*Mastland, Inc. v. Evans Furniture, Inc.,* 498 N.W.2d 682, 686 (Iowa 1993); *see Tappe ex rel. Tappe v. Iowa Methodist Medical Ctr.,* 477 N.W.2d 396, 399 (Iowa 1991); *see, also Thompson v. Burke Eng'g Sales Co.,* 252 Iowa 146, 148–49, 106 N.W.2d 351, 353 (1960); *Eaves v. City of Ottumwa,* 240 Iowa 956, 969, 38 N.W.2d 761, 769 (1949). When there "is sufficient competent evidence of the existence of the foundation of facts to generate an inference of negligence under res ipsa loquitur doctrine, then summary judgment is not appropriate and the issue of general negligence should be submitted to the jury." *Welte,* 482 N.W.2d at 440. With these general rules in mind, the court turns its attention to Brewster's general negligence claim.

It is the second element of the doctrine which concerns the court here as the parties have drawn their skirmish lines over it.[10]

rejects this interpretation of comment f. The Restatement (Second) of Torts 2d, § 343, sets out the requirements as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

Comment f contains the following statement:

> A possessor who holds his land open to others must possess and exercise a knowledge of the dangerous qualities of the place itself and the appliances provided therein, which is not required of his patrons. Thus, the keeper of a boardinghouse is negligent in providing a gas stove to be used in an unventilated bathroom, although the boarder who is made ill by the fumes uses the bathroom with knowledge of all the circumstances, except the risk of so doing. This is true because the boardinghouse keeper, even though a man of the same class as his boarders, is required to have a superior knowl-

edge of the dangers incident to the facilities which he furnishes to them.

The Iowa Supreme Court has declared that

> an owner or occupant of real estate must exercise reasonable care to keep his property reasonably safe for invitees. However, this does not mean the standard of care to be exercised requires the premises be so free from defects as to guarantee the safety of all such visitors or users.

*Chevraux v. Nahas,* 260 Iowa 817, 820, 150 N.W.2d 78, 80–81 (1967); *see Hanson,* 259 Iowa at 547, 144 N.W.2d at 873.

Brewster's contention runs directly counter to the holdings of these Iowa cases since it would, in effect, cause the owners of property with appliances on the land to guarantee the safety of those appliances. Furthermore, the Iowa Supreme Court held in *Byers v. Contemporary Indus. Midwest,* 419 N.W.2d 396, 397 (Iowa 1988), that it was unwilling to create a higher standard of care owed to invitees by owners of convenience stores. The significance of the holding in *Byers* is that it demonstrates the Iowa Supreme Court's unwillingness to create differing standards of care among property owners.

10. The court has no difficulty finding that there is no material question of fact with respect to the question whether the automatic doors were un-

The issue herein is whether the accident in question is of the type that in the ordinary course of events would not happen if reasonable care had been employed by VAMC. Brewster points the court to that line of authority exemplified by the New Jersey Supreme Court's decision in *Rose v. Port of New York Auth.*, 61 N.J. 129, 293 A.2d 371 (1972). In *Rose*, the plaintiff was injured when he was struck by automatic doors at an exit terminal at John F. Kennedy International Airport. *Id.* at 133, 293 A.2d at 373. Following the close of plaintiff's case, in which plaintiff had been unable to establish a specific malfunction of the automatic doors, the defendant port authority moved for a directed verdict. The trial court denied defendant's motion and the matter was submitted to the jury, which returned a verdict against defendant. *Id.* at 132, 293 A.2d at 372. Defendant appealed and the New Jersey Superior Court reversed, finding insufficient evidence upon which to ground a finding of negligence. *Id.* at 134, 293 A.2d at 373. The New Jersey Supreme Court then granted plaintiff's petition for further review, and affirmed the decision of the trial court. The court also addressed the issue of whether the plaintiff had established, as an element of *res ipsa loquitur*, that the occurrence of the closing of the automatic doors "itself ordinarily bespeaks negligence", and declared that:

> Here the occurrence bespeaks negligence. Members of the public passing through automatic doors, whether in an airport, office building or supermarket do so generally without sustaining injury. What happened to the plaintiff here is fortunately unusual and not commonplace. It strongly suggests a malfunction which in turn suggests neglect.
>
> ... That the door did not function properly seems highly probable, but it should not be the burden of the plaintiff to come forward with proofs as to the precise nature of the probable malfunction. His expert witness did suggest several things that might have gone wrong; he was hardly in a position to pinpoint the actual operational failure that did occur. Such a task might very likely be insuperable. Under such circumstances it is fair to call upon the defendant for an explanation.

*Id.* at 136–37, 293 A.2d at 375.

State courts in other jurisdictions have followed the lead of the *Rose* court's decision and have held that accidents with automatic doors under similar circumstances are of the type or variety that ordinarily do not occur in the absence of negligence. *See Brown v. Scrivner, Inc.*, 241 Neb. 286, 289, 488 N.W.2d 17, 19 (1992) (finding that the closing of automatic doors was an event upon which a reasonable person could conclude that "it is more likely than not that there was negligence associated with the automatic door's malfunction."); *Landmark Hotel & Casino, Inc.*, 104 Nev. at 301, 757 P.2d at 363–64 (pointing out that closing of automatic doors "strongly suggests a malfunction attributable to negligence."); *see also McDonald v. Aliquippa Hosp.*, 414 Pa.Super. 317, 322, 606 A.2d 1218, 1221 (1992) (noting that "[t]he failure of the doors to sense an object in their path and remain open until safe passage had been secured was a malfunction which would not ordinarily occur if the doors had been inspected and properly maintained."), *appeal denied*, 532 Pa. 646, 614 A.2d 1142 (1992).

The United States, on the other hand, directs the court's attention to a contrary line of authority exemplified by the New Mexico Supreme Court's decision in *Hisey v. Cashway Supermarkets, Inc.*, 77 N.M. 638, 426 P.2d 784 (1967). In *Hisey*, the plaintiff was injured when automatic doors to a supermarket closed on him when he was leaving the store. *Id.* at 639, 426 P.2d at 785. The evidence produced at trial was limited to the occurrence of the accident and the plaintiff's

---

der the exclusive control of Defendant at the time of the events giving rise to this lawsuit. Although Taylor was called to work on the doors in question on two occasions, the last occurrence was in July 1988, some two years prior to Brewster's accident. VAMC was singularly responsible for the day to day maintenance of the doors. From this set of undisputed facts, the court finds that the VAMC had exclusive control over the automatic doors. *See Landmark Hotel & Casino, Inc. v. Moore*, 104 Nev. 297, 300, 757 P.2d 361, 363 (1988) (holding that owner of premises had exclusive control where no maintenance agreement with installer of automatic sliding glass doors which would have demonstrated joint control of doors).

injuries. *Id.,* 426 P.2d at 785. The trial court directed a verdict against plaintiff and he appealed. In affirming, the New Mexico Supreme Court first pointed out that "[a] proprietor of a store is not an insurer against all accidents and injuries to his customers." *Id.* at 640, 426 P.2d at 785. The court then went on to address the issue of application of *res ipsa loquitur* under the facts before it. The court pointed out that:

> The absence of any evidence, or reasonable inference to be drawn from evidence that this accident is the kind which ordinarily does not occur in the absence of the negligence of someone alone defeats the application of the doctrine of res ipsa loquitur. The fact that the door had been operating properly before the accident and that it thereafter operated normally without any repairs being required clearly fails to sustain an inference that the isolated malfunction would not have occurred but for defendant's negligence. Thus, plaintiff having failed to establish the essential elements of the doctrine, res ipsa loquitur was not available to make a prima facie case.

*Id.* at 640, 426 P.2d at 786 (citations omitted); *see also Johnston v. Grand Union Co.,* 189 Ga.App. 270, 375 S.E.2d 249, 270–71 (1988) (holding that trial court did not err in granting summary judgment for defendant where automatic doors closed on patron without reason since "solitary" fact that doors closed on customer did "not constitute any evidence from which it can be inferred the store knew or should have known the door might close unexpectedly."), *cert. denied,* 189 Ga.App. 912 (1989).

**4. Certified Question.** Whether a federal district court certifies a question of state law to the state's supreme court is "a matter addressed to the discretion of the district court." *Packett v. Stenberg,* 969 F.2d 721, 726 (8th Cir.1992) (citing *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974)).[11] Because there is a conflict of authority as to whether the doctrine of *res ipsa loquitur* is applicable under the circumstances of this case, so as to preclude the court from granting summary judgment, and the Iowa appellate courts have yet to weigh in on either side of the question, the court believes that the issue should be certified to the Iowa Supreme Court.

Because of this unresolved question of the availability under Iowa law of the doctrine of *res ipsa loquitur* in a case of this type, the court intends to certify a question to the Iowa Supreme Court, pursuant to Iowa Code § 684A.1.[12] The court shall allow the parties seven days from service of this order to formulate an agreed upon question to certify to the Iowa Supreme Court. If the parties are unable to arrive at a stipulated certified question, the parties shall so notify the court and both parties shall have ten days from the date of this order to submit what they each believe to be the appropriate question for certification. The court will then hold a

---

**11.** Local Rule of the United States District Court for the Southern District of Iowa 23 provides that:

> When there is involved in any proceeding a question of law of a state which may be determinative of the cause then pending in this court and as to which it appears there is no controlling precedent in the decisions of the appellate courts of the state, a motion may be made to certify the question of law to the highest appellate court of the state. This court, on such motion or on its own motion, may certify such question to the appropriate court, if authorized by state or rule.

The Iowa Code provides that:

> The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate appellate court of another state, when requested

by the certifying court, if there are involved in a proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state.

Iowa Code § 684A.1 (1993).

**12.** The court suggests that the following question should be certified to the Iowa Supreme Court:

### Question to be Certified

1. Where an appliance on land causes injury to an invitee to those premises and the owner of the land has exclusive control over the premises, but the evidence is limited to only the occurrence of the accident and the plaintiff's injuries; under Iowa law does the doctrine of *res ipsa loquitur* preclude the granting of summary judgment?

hearing on the issue of certification to the Iowa Supreme Court. Further action on this case shall be stayed until such time as the Iowa Supreme Court answers the court's certified question or declines to do so.

**D. Third–Party Defendant Taylor's Motion for Summary Judgment.** The United States seeks indemnity or contribution from Taylor on three theories: (1) negligence; (2) strict liability; and (3) breach of implied warranties of merchantability and fitness.

■ **1. Assertion of both breach of warranty and strict liability claims.** Taylor asserts that the United States may not maintain both its claims under strict liability and breach of implied warranties. The Iowa Supreme Court has taken the view that strict liability is ordinarily in lieu of a theory of implied warranty, and both theories should be submitted only in "exceptional situations." *Hawkeye Security Ins. Co. v. Ford Motor Co.,* 199 N.W.2d 373, 381 (Iowa 1972). The Iowa court's reasoning is that the issues under implied warranty are adequately submitted under strict liability, particularly in a personal injury as opposed to an economic injury action. *Id.* at 381–82.

Upon careful examination of the record, the court is not convinced that the factual situation here is so exceptional that both strict liability and implied warranty theories should be permitted to be put forward by the United States. Indeed, the United States does not make any claim of such exceptional circumstances, but instead asserts that since this case is to be tried to the bench rather than a jury, that the court wait until the time of trial to determine which theory the United States will be permitted to advance. The court declines to do so here because the loss at issue involves personal injury and the Iowa Supreme Court has indicated that in such cases strict tort liability generally overrides recovery on a warranty theory. *Id.* at 381. Therefore, the court shall grant Taylor's Motion for Summary Judgment on the United States' warranty claims found in Count IV and V.

■ **2. General Negligence Claim.** In Count II of its third-party complaint against Taylor, the United States seeks to obtain indemnity or contribution from Taylor under the claim of negligence, and seeks to create an inference of negligence using the doctrine of *res ipsa loquitur.* As noted above, *see* supra p. 17, the first prong of the doctrine requires a showing that "the injury is caused by an instrumentality under the exclusive control of the defendant ..." *Mastland, Inc.,* 498 N.W.2d at 686. Here, there is no question of material fact that Taylor did not have exclusive control of the automatic doors at VAMC. Rather, the record indicates that VAMC only serviced the automatic doors in question on two occasions. Such limited and infrequent interaction with the automatic doors at issue in this case hardly can be deemed to be "exclusive control."

Therefore, since there is no material fact question that Taylor did not have exclusive control over the doors, the court shall grant Taylor's Motion for Summary Judgment as to the negligence claim found in Count II of the United States' Third–Party Complaint.

■ **3. Expert Testimony.** Taylor has directed the court to the fact that its expert will testify at trial that the automatic doors were installed properly and were in compliance with applicable design and safety standards at the time of the accident. The United States, on the other hand, has presented no portion of the record which would demonstrate either that Taylor was negligent in any of the particulars alleged in Count I of the third-party complaint, or that the doors were defective at the time of their installation as alleged in Count III. Although Iowa law does not require the presentation of expert testimony in order to prevail in a product liability action, *see Wernimont v. International Harvestor Corp.,* 309 N.W.2d 137, 140 (Iowa Ct.App.1981), when the issue is to be proven by circumstantial evidence, the evidence "must be sufficient to make the theory reasonably probable, and more probable than any other theory based on the evidence." *Id.* The operation of the automatic doors is highly complex and technical in nature. The United States has not directed the court to either direct evidence or circumstantial evidence which would generate a material fact question in light of the purported testimony of Taylor's expert. The extent of the United

States' circumstantial evidence is that following the accident Taylor installed adjustable switches on the doors. This fact, however, without the benefit of expert testimony linking it to the safety of the automatic doors fails to raise a material question of fact concerning either the negligence or the strict liability claims.

Therefore, finding that the United States has not produced sufficient circumstantial evidence to generate a question of material fact, the court shall grant Taylor's Motion for Summary Judgment as to the negligence claims found in Count I and the strict liability claims found in Count III.

### IV. CONCLUSION

The United States' Motion for Summary Judgment on Brewster's claim of specific negligence is granted because Brewster's resistance and affidavits, absent the hearsay statements of Brewster's sisters, fail to generate a question of material fact. The United States' summary judgment motion concerning Brewster's claim of general negligence and *res ipsa loquitur* is deferred pending certification to the Iowa Supreme Court. Third Party Defendant Taylor Industries, Inc.'s Motion for Summary Judgment against the United States is granted because the United States has failed to generate a material question of fact concerning its claims against Taylor Industries, Inc.

**IT IS SO ORDERED.**